UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE DMCA § 512(h) | * | CIVIL ACTION NO.: 2:25-mc-00474 |
| SUBPOENA TO X CORP. | * | |
| | * | |
| | * | JUDGE: ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE: DONNA PHILLIPS |
| | * | CURRAULT |
| | * | |

**<u>MEMORANDUM IN SUPPORT OF</u>**
**<u>MOTION TO COMPEL COMPLIANCE WITH SUBPOENA</u>**

Plaintiff respectfully submits this memorandum in support of its Motion to Compel compliance with a third-party subpoena issued to X Corp. pursuant to Federal Rule of Civil Procedure 45. The subpoena, which was duly served on May 19, 2025,[1] seeks a narrow and straightforward identification of the owner of a Twitter/X account that reposted Plaintiff's copyrighted video content without authorization. The deadline for compliance was June 9, 2025, and X Corp. has neither produced any responsive materials nor engaged in any meaningful effort to resolve this matter. Instead, X Corp. waited until June 2, just one week before the subpoena deadline, to serve boilerplate objections and flatly refuse to respond to the subpoena.[2]

X Corp. remains in noncompliance. As detailed below, its objections are legally deficient, and its refusal to comply is unjustified. Plaintiff now seeks an order compelling compliance.

**FACTUAL AND PROCEDURAL BACKGROUND**

This motion arises from X Corp.'s ongoing pattern of obstructing legitimate efforts to enforce copyright protections on its platform. Plaintiff is a content creator and attorney who

---
[1] Doc. 14.
[2] See written objections received from X Corp., attached hereto as Exhibit 1.

regularly produces original firearms- and law-related video content, which is monetized through social media platforms.[3] One such video, uploaded on November 22, 2024, which depicts Plaintiff firing a Glock 44 pistol modified to operate in fully automatic mode, was uploaded to Plaintiff's Twitter/X account, where it currently has 6.8 million views.[4] However, it has been subsequently reposted without authorization by dozens of accounts, some of which accumulated tens of millions of views on individual posts containing the copied, unedited content. Despite issuing valid DMCA takedown notices under 17 U.S.C. § 512, Plaintiff has been forced to submit multiple duplicate takedown requests against larger "meme farming" and aggregator accounts before any action was taken, and in some instances, no action is taken at all.  For example, an account with 2 million followers on X, "Interesting as Fuck," reposted Plaintiff's original video, unaltered, without permission, and in clear violation of the DMCA on June 1, 2025.[5] Undersigned counsel submitted DMCA takedown notices through X's DMCA reporting system on June 1,[6] June 2,[7] and June 4,[8] and forwarded a Cease and Desist to counsel for X on June 9, 2025.[9]  However, at the time of this email, the video on this popular aggregation channel remains in place, while DMCA requests submitted against smaller accounts were executed almost immediately.  By way of example, at 7:00 PM on June 1, Plaintiff submitted a DMCA takedown notice against user "Бёая" with user name "@therealURSASEC", and account with fewer than 1,500 followers, and that infringing content was removed by X within roughly a half hour.

---

[3] Doc. 1.
[4] https://x.com/jjreeves/status/1859976280076402993
[5] https://x.com/interesting_ail/status/1929184226286452886?s=46&t=X5q_0D_tZaQv8sb8IhSOrQ
[6] X report no. LEGAL-900629: DMCA
[7] X report no. LEGAL-906590: DMCA
[8] X report no. LEGAL-915492: DMCA
[9] See Cease and Desist attached hereto as Exhibit 2.

This disparate treatment of accounts based on follower count strongly suggests that X applies its DMCA enforcement policies selectively, shielding high-engagement accounts that boost X's ad revenue and traffic.

In parallel with this disturbing enforcement bias, X has actively resisted lawful discovery efforts to identify repeat infringers. In the present instance, X has refused to comply with a narrowly tailored, court-authorized subpoena seeking basic subscriber information for one such anonymous account.[10] X's counsel responded with vague, boilerplate objections two weeks after service and offered no compromise or production. This resistance is not isolated. X Corp. has a track record of obstruction in connection with subpoenas served in this matter. Plaintiff previously encountered resistance from X Corp. during an earlier attempt to obtain similar information about a related account. In that instance, Plaintiff's process server was met with open hostility and refusal of legal service at X Corp.'s designated corporate headquarters.[11] As discussed below, this pattern of obstruction—both through delayed or selective DMCA enforcement and refusal to comply with valid court orders—reflects X's apparent policy of protecting the very conduct the DMCA was designed to curb. Plaintiff now moves to compel compliance.

This action in particular arises from the unauthorized reposting of Plaintiff's copyrighted video by an anonymous Twitter/X account, @BasedSolutions1, an account with approximately 84,000 followers.[12] As detailed in the pleading that originated this action, requests to remove Plaintiff's content were met with vulgar, public insults made by this user.[13] On March 2, 2025, Plaintiff submitted a DMCA takedown request to X,[14] and on March 3, 2025, X disabled the

---

[10] Ex. 1.
[11] Doc. 10 and exhibits thereto.
[12] Doc. 1.
[13] *Id.*
[14] X report no. LEGAL-472691: DMCA

content, replying: "We're writing to let you know that we have reviewed your allegations of copyright infringement, and have disabled the content that you reported from our site."[15]

In an effort to identify the responsible party for judicial redress, Plaintiff obtained leave of Court to issue a third-party subpoena to X Corp. under Rule 45.[16] The subpoena was served on X Corp. on May 19, 2025, and sought only the most basic information to identify the account holder associated with the infringing repost.[17]

X Corp. did not respond at all for two weeks. Then, on June 2, 2025 — the last day to object and a week before the subpoena deadline X served three pages of mostly generic, boilerplate objections and concluded these objections with: "Subject to and without waiving these objections, X Corp. responds as follows: X Corp. will not produce information in response to this Request."[18] As of the filing of this motion, X Corp. has not produced a response to the subpoena.

## ARGUMENT

X Corp.'s refusal to comply with the subpoena is legally baseless and procedurally defective. No motion to quash was filed, and the only objections served were either generic or inapplicable, submitted on the last possible day under Rule 45. Even assuming the objections were properly preserved, each fails on the merits, as detailed below. The subpoena seeks only narrow, identifying information related to an infringing account via email transmission. It does not implicate any protected content, trade secret, or impose any undue burden. X Corp.'s refusal to comply appears instead to reflect an internal policy of shielding high-engagement users from accountability, rather than any genuine legal concern.

---

[15] Doc. 1.
[16] Doc. 10.
[17] Doc. 14.
[18] Ex. 1 hereto.

"Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. A court may quash or modify a subpoena under Rule 45 when the subpoena (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden. In determining whether a burden is undue, the Court considers (1) relevance of the information requested; (2) the need of the party for the documents, (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the subpoena is directed to a non-party, the court may also consider the inconvenience or expense to the non-party." *Dotson v. Edmonson*, CV 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017). (Citations and quotations omitted.)

First, no motion to quash or modify the subpoena was filed in the time permitted under Rule 45. Instead, X Corp. served written objections on June 2, 2025—exactly 14 days after service and only one week prior to the compliance deadline.[19] It then flatly refused to produce any documents. To timely quash this subpoena, X Corp. was required to move to quash before the return date of the subpoena. It did not do so, and it has not done so as of the filing of this motion.

And while X provided written objections, X's written objections are made in bad faith: Each is simply generic or wholly inapplicable. The Fifth Circuit has consistently rejected the use of vague and generalized objections in discovery responses. See *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding that "objections that state that a discovery request is overly broad, burdensome, or oppressive, without more, do not meet the burden of specificity"). These types of objections are routinely

---

[19] Ex. 1.

disregarded by courts as boilerplate and non-substantive. They fail to identify any particular burden, privilege, or deficiency with the request and offer no explanation for withholding the information sought. See *McLeod* at 1485 (5th Cir. 1990) (rejecting validity of boilerplate objections and holding that the "party resisting discovery must show specifically how […] each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive"); *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) ("A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive. This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. Failing to do so […] makes such an unsupported objection nothing more than an unsustainable boilerplate.")

Turning to those objections, one by one:

**General Objection 1:**

"The following responses are based on information currently available to X Corp. These responses are given without prejudice to X Corp.'s right to produce or rely on subsequently discovered information."

**General Objection 2:**

"X Corp. objects to each Request to the extent it seeks documents not in X Corp.'s possession, custody, or control."

**General Objection 3:**

"X Corp. objects to all definitions, instructions, and Requests that purport to impose obligations on X Corp. that are different from, in addition to, or greater than those set forth in the Federal Rules of Civil Procedure."

These objections are not proper bases for withholding information and do not specifically address the request at issue and may be disregarded. Such objections do not identify any particular burden, privilege, or legal defect in the subpoena and instead amount to vague disclaimers that

serve only to evade compliance. Moreover, the subpoena in this case seeks only materials that are plainly within X Corp.'s possession and control: identifying account information for a user of its own platform. If X Corp. truly lacked responsive information, the proper response would be to state that affirmatively—not to lodge a conditional objection. Likewise, X Corp. has not identified a single definition or instruction it believes to be improper under the Federal Rules. These objections fail to articulate any valid reason to withhold production and should be overruled.

**General Objection 4:**

"X Corp. objects to the Subpoena on the basis that this is the improper forum to bring this action. X Corp. is headquartered in Bastrop, Texas, and thus, this action is more properly brought there."

Rule 45 does not require that subpoenas be issued or enforced in the district of the nonparty's headquarters. Rather, Rule 45 permits a subpoena to be issued "from the court where the action is pending," and motions to compel compliance are likewise properly brought in that same court. Here, the subpoena was issued from and compliance was demanded in the Eastern District of Louisiana, where the Plaintiff is domiciled and where the underlying copyright enforcement matter is being pursued. Nothing in Rule 45 requires that Plaintiff initiate a separate proceeding in Bastrop County merely because X Corp. is headquartered there. Indeed, the subpoena was personally served on X Corp. within the 100-mile radius of its headquarters, which satisfies the geographical limitations for enforcement under Rule 45.

X Corp. has not filed a motion to quash under Rule 45, which would be the appropriate mechanism to challenge jurisdiction or burden. Instead, it attempts to unilaterally declare the forum improper by a letter to counsel without legal support. This objection should be overruled. See *Dotson* at *2 (enforcing subpoena issued from E.D. La. against a Texas non-party).

**General Objection 5:**

"X Corp. objects to the Subpoena to the extent it calls for information to be produced in a form or manner other than that kept by X Corp. in the usual course of its business."

This boilerplate objection is irrelevant. The subpoena does not demand production in any form inconsistent with the ordinary course of business; rather, it simply requests documents responsive to clearly defined categories related to a discrete incident of copyright infringement.

**General Objection 6:**

"X Corp. objects to the extent the Requests call for materials protected by the attorney-client privilege, work product doctrine, confidentiality, trade secrets, or any other privilege or protection."

This objection is improper and insufficient. X Corp. has provided neither a privilege log nor any explanation of what responsive materials it believes are protected. Without that information, the objection is baseless and cannot support noncompliance with the subpoena.

**General Objection 7:**

"X Corp. objects to the Requests to the extent they exceed the scope of basic subscriber information that X Corp. may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., including the Stored Communications Act, 18 U.S.C. §§ 2701 et seq. ("SCA"), and to the extent they seek the content of a user's electronic communications, such as messages, posts, comments, photos, or videos, because such a request is barred by the SCA. […]"

X Corp.'s objection misstates the scope and purpose of the subpoena and misapplies the Stored Communications Act ("SCA"). Plaintiff does not seek the "content" of user communications protected by the SCA, such as private messages or unpublished drafts. The subpoena instead seeks narrowly tailored non-content metadata and subscriber-identifying information, such as account registration data, IP login logs, and any available information about the user responsible for publishing infringing content for purposes of serving that infringing account with suit.

Indeed, the SCA at 18 U.S.C. § 2702 and 2703 expressly provides that X may disclose the information sought in this subpoena without violating the SCA. X Corp. fails to identify any specific request that actually seeks protected "content" as provided for under the SCA. Instead, X almost tacitly admits that Plaintiff is entitled to this information in the first line of this objection: "**X Corp. objects to the Requests to the extent they exceed the scope of basic subscriber information**[.]"Indeed, basic subscriber information is what is specifically sought by this subpoena, and this objection clearly, as written, does not apply. This is not a good-faith assertion of statutory privilege—it is blatant obstruction.

**General Objection 8:**

"X Corp. further objects to the Requests because the materials you provided do not satisfy the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker. See *Smythe v. Does 1-10*, No. 15- mc-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) (denying the motion to enforce a subpoena against X Corp. where movant failed to overcome user's First Amendment right to anonymous speech) […]"

X Corp. objects that Plaintiff has not satisfied the First Amendment standard necessary to compel the disclosure of anonymous user information. But First Amendment considerations are primarily implicated when a plaintiff seeks to unmask an anonymous speaker **without first making a facial showing of unlawful conduct**. That is not the case here. This Court has already issued a subpoena under 17 U.S.C. § 512(h), finding it facially valid. Moreover, X has already determined that the material posted by @BasedSolutions1 constitutes copyright infringement and has removed it pursuant to a valid DMCA complaint.  More specifically, on March 3, 2025, X acknowledged receipt of a DMCA takedown request filed by James Reeves (Ticket No. LEGAL-472691).[20]  X reviewed the complaint and subsequently removed the infringing material from the infringing account, affirming its violative nature under the DMCA.[21]  The infringing user,

---

[20] Doc 1, Ex. 2.
[21] *Id.*

@BasedSolutions1, was notified of the removal and responded with public defiance, explicit insults, and an admission that s/he had taken the content without crediting the rightful owner.[22]

Because X has already made a determination that the conduct violated the DMCA,[23] this satisfies the requirement for a prima facie case of infringement for the subpoena to issue. This is not a case of questionable fair use or free speech concerns; it is an instance of straightforward copyright infringement confirmed by the service provider and unwisely admitted to by the infringing user – this conduct is not protected by the First Amendment. These facts distinguish this case from decisions cited by X like *Smythe v. Does 1–10*, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016), where the court denied enforcement because the plaintiff submitted no competent evidence of wrongdoing. Here, the evidentiary predicate is already established both judicially and by X Corp.'s own actions, rendering further First Amendment analysis unnecessary.

**General Objection Nos. 9 and 10 – General Objections and Reservation of Rights**

Plaintiff objects to X Corp.'s attempt to incorporate unspecified, continuing general objections into each response. Blanket general objections are disfavored and do not preserve specific objections under federal law.

**Specific Objections:**

"In addition to the foregoing objections, X Corp. objects to the terms "any other identifying information," and "reasonably necessary" on the basis that these terms are vague and ambiguous, overbroad, and unduly burdensome, as the scope of materials sought in the Request is unclear. X Corp. further objects to the Subpoena to the extent that it calls for confidential, personal, private, and/or protected information. X Corp. further objects to the Request to the extent it exceeds the scope of basic subscriber information that X Corp. may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, including the SCA, 18 U.S.C. §§ 2701 *et seq.*, and to the extent it seeks information that is prohibited from disclosure and/or is not subject to production under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, including the SCA, 18 U.S.C. §§ 2701 *et seq*. X Corp. further objects to the Request to the extent that the materials provided do not satisfy the requisite First Amendment safeguards. X Corp. further objects to this Request as overbroad because X Corp. either does not understand your need

---

[22] Doc 1, Ex. 1.
[23] Doc. 1, Ex. 2.

for the requested data, or does not believe your request to be appropriately limited to data necessary or relevant for your litigation. X Corp. objects to the Subpoena to the extent that it seeks deleted content because, to the extent any such data exists, it is not reasonably accessible. *See United States v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 WL 3111972, at *3-7 (N.D. Ill. Oct. 21, 2005) (restoration of deleted content constitutes an "undue burden," and nonparties are not subject to the significant burden of restoring such data). **Subject to and without waiving these objections, X Corp. responds as follows: X Corp. will not produce information in response to this Request.**"

The terms "any other identifying information" and "reasonably necessary" are neither vague nor ambiguous when read in context with the Subpoena, which clearly seeks subscriber information associated with a specific user alleged to have engaged in copyright infringement. To the extent X Corp. asserts that the Subpoena seeks data outside the scope of the Electronic Communications Privacy Act or Stored Communications Act ("SCA"), Plaintiff again maintains that the Subpoena is limited to non-content information permitted under the SCA, including subscriber data, IP address, and associated identifiers relevant to Plaintiff's claims. Further, once again, X Corp.'s assertion of First Amendment protections is inapplicable here. The First Amendment does not protect anonymous speech used to facilitate unlawful conduct, including copyright violations. Here, the Court has already issued the Subpoena, indicating that a facial showing has been made sufficient to warrant disclosure. X Corp.'s assertion that it "does not understand [Plaintiff's] need" for the data or finds the request overbroad is, frankly, nonsense, and not a valid basis to withhold responsive information. Additionally, the objection regarding deleted content is speculative and unsupported. Plaintiff does not seek inaccessible or deleted data unless such data is reasonably retrievable and within X Corp.'s ordinary course of business. X Corp. bears the burden of demonstrating that compliance would impose undue burden under Rule 45, which it has failed to do, and it has failed to quash. Accordingly, Plaintiff respectfully requests that the Court overrule these objections and compel compliance with the Subpoena.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the Motion to Compel and order X Corp. to produce the limited identifying information responsive to the Subpoena within five (5) days of the Court's order. The Subpoena was properly issued, seeks only non-content subscriber information, and is not barred by the Stored Communications Act or the First Amendment. X Corp.'s objections are both procedurally deficient and substantively meritless – and arguably contemptuous. Prompt compliance is essential to avoid further delay in resolving this matter.

Respectfully submitted,

**/s/ James J. Reeves II**
**JAMES J. REEVES II (#32643)**
639 Loyola Avenue, Suite 1800
New Orleans, Louisiana 70113
Telephone: (504) 336-2880
Facsimile: (504) 336-2342
Email: jreeves@mmkfirm.com
Counsel for Movant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion has been served on counsel for X Corp. via email and the CMECF system on June 10, 2025.

**/s/ James J. Reeves II**
**JAMES J. REEVES II**