# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE DMCA § 512(h), SUBPOENA TO X CORP.** | **CIVIL ACTION NO.: 2:25-MC-00474** |
| | **SECTION: "L" (2)** |
| | **JUDGE:      ELDON E. FALLON** |
| | **MAGISTRATE:   DONNA PHILLIPS CURRAULT** |
| | HEARING DATE: August 6, 2025 |
| | HEARING TIME: 9:00am |

## RESPONDENT (NON-PARTY) X CORP.'S
## OPPOSITION TO PETITIONER'S MOTION TO COMPEL

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ................................................................................................................3

    A.    This Court Lacks Personal Jurisdiction Over X Corp. ...........................................4

        1.    Personal Jurisdiction, Generally .................................................................4

        2.    X Corp. is Not Subject to General Jurisdiction in Louisiana......................5

        3.    X Corp. is Not Subject to Specific Jurisdiction in Louisiana ....................7

        4.    Louisiana is Not the Proper Venue .............................................................9

    B.    The Court Has Not Determined Whether Any First Amendment Safeguards
        for Unmasking the Anonymous User Are Applicable Here .................................11

        1.    The First Amendment Protects the Ability to Speak Anonymously on
                the Internet ................................................................................................11

        2.    The Motion Does Not Satisfy First Amendment Safeguards to Unmask
                the User .....................................................................................................15

III.  CONCLUSION ...........................................................................................................16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ACLU v. Gonzales*,
 478 F. Supp. 2d 775 (E.D. Pa. 2007) ......................................................................12

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
 18 F.4th 783 (5th Cir. 2021) ............................................................................2, 6, 8

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
 751 F.3d 796 (7th Cir. 2014) ..................................................................................9

*Angelillo v. Facebook*,
 2024 WL 4529564 (M.D. Pa. Oct. 18, 2024), *aff'd*, 2025 WL 1189822 (3d Cir.
 Apr. 24, 2025) ........................................................................................................6

*In re Anonymous Online Speakers*,
 661 F.3d 1168 (9th Cir. 2011) ...........................................................................2, 13

*Arista Recs., LLC v. Doe 3*,
 604 F.3d 110 (2d Cir. 2010) ............................................................................13, 14

*BNSF Ry. Co. v. Tyrrell*,
 137 S. Ct. 1549 (2017) ............................................................................................7

*Bose Corp. v. Consumers Union of U.S., Inc.*,
 466 U.S. 485 (1984) ..............................................................................................16

*Brown v. Entm't Merch. Ass'n*,
 564 U.S. 786 (2011) .........................................................................................11, 12

*Buckley v. Am. Const. L. Found.*,
 525 U.S. 182 (1999) ...........................................................................................2, 12

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ................................................................................................7

*Cap. Credit Inc. v. Mainspring Am., Inc.*,
 2020 WL 4043499 (W.D. Tex. July 17, 2020) ........................................................6

*Clemens v. McNamee*,
 615 F.3d 374 (5th Cir. 2010) ...................................................................................9

*Cor Clearing, LLC v. Investorshub.com, Inc.*,
 2016 WL 3774127 (N.D. Fla. May 11, 2016) .......................................................13

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................................5

*Dendrite Int'l, Inc. v. Doe No. 3*,
  775 A.2d 756 (App. Div. 2001) .....................................................................14

*Dish Network L.L.C. v. Motasaki*,
  2020 WL 10786543 (S.D. Tex. Jun. 26, 2020).............................................16

*In re DMCA Section 512(h) Subpoena to Facebook, Inc.*,
  2015 WL 12805630 (S.D. Tex. Nov. 18, 2015) .............................................10

*In re DMCA Section 512(h) Subpoena to YouTube* (*Google, Inc.*),
  581 F. Supp. 3d 509 (S.D.N.Y. 2022)...........................................................15

*Doe v. 2TheMart.com Inc.*,
  140 F.Supp.2d 1088 (W.D.Wash. 2001)........................................................14

*Doe v. Cahill*,
  884 A.2d 451 (Del. 2005) .............................................................................14

*Dotson v. Edmonson*,
  2017 WL 11535244 (E.D. La. Nov. 21, 2017) ...............................................11

*Dougherty v. U.S. Dep't of Homeland Sec.*,
  2022 WL 20717365 (S.D. Tex. Jan. 19, 2022)..............................................13

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
  46 F.4th 226 (5th Cir. 2022) .........................................................................5

*In re Drasin*,
  2013 WL 3866777 (D. Md., July 24, 2013).....................................................3

*Elargo Holdings, LLC v. Doe-68.105.146.38*,
  2016 WL 10516727 (M.D. La. May 31, 2016).................................................16

*Enterline v. Pocono Medical Center*,
  751 F.Supp.2d 782 (M.D.Pa. 2008) ...............................................................3

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) .........................................................................6

*Fletcher v. Facebook, Inc.*,
  2025 WL 714238 (D.S.C. Feb. 13, 2025), *report and recommendation
  adopted*, 2025 WL 713777 (D.S.C. Mar. 5, 2025) .........................................6

*Ford Motor Co. v. Montana Eighth Judicial District Ct.*,
  141 S. Ct. 1017 (2017)...................................................................................8

*Frank v. PNK (Lake Charles) LLC*,
   947 F.3d 331 (5th Cir. 2020) ................................................................5

*Garner v. Bumble, Inc.*,
   2023 WL 6065481 (N.D. Ill. Sept. 18, 2023) ......................................6

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ...................................................................6

*Hunter Killer Prods., Inc. v. Boylan*,
   2021 WL 2878558 (W.D. Tex. Jan. 28, 2021) .....................................16

*Indiana Newspapers, Inc. v. Miller*,
   980 N.E.2d 852 (Ind. Ct. App. 2012)....................................................3

*Jackson v. Tanfoglio Guiseppe, SRL*,
   615 F.3d 579 (5th Cir. 2010) .................................................................4

*Johnson v. TheHuffingtonPost.com*,
   21 F.4th 314 (5th Cir. 2021) .....................................................2, 6, 7, 9

*Johnson v. The Town of Prosper, Texas*,
   No. 4:23-cv-650, Am. Mem. Op. and Order, ECF 35 (E.D. Tex. July 1, 2025) ...................13

*K-Beech, Inc. v. Does 1-57*,
   2011 WL 5597303 (M.D. Fla. Nov. 1, 2011), *report and recommendation
   adopted*, 2011 WL 5597293 (M.D. Fla. Nov. 17, 2011) ......................14

*Krinsky v. Doe 6*,
   159 Cal. App. 4th 1154 (2008) .............................................................14

*Lamont v. Postmaster General*,
   381 U.S. 301 (1965).............................................................................12

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995).............................................................................12

*McVicker v. King*,
   266 F.R.D. 92 (W.D.Pa. 2010) ..............................................................3

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) .................................................................5

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
   82 F. Supp. 3d 979 (N.D. Cal. 2015) ..............................................14, 15

*NetChoice v. Carr*,
   2025 WL 1768621 (N.D. Ga. June 26, 2025)......................................13

*NetChoice, L.L.C. v. Fitch*,
   134 F.4th 799 (5th Cir. 2025) ...................................................................................3

*NexLearn, LLC v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017)..................................................................................8

*Nunes v. NBCUniversal Media, LLC*,
   582 F. Supp. 3d 387 (E.D. Tex. 2022).......................................................................6

*Pac v. Cirrus Design Corp.*,
   93 F.4th 879 (5th Cir. 2024) .....................................................................................4

*Packingham v. North Carolina*,
   582 U.S. 98 (2017)...............................................................................................2, 12

*Perkins v. Benguet Consolidated Mining Company*,
   342 U.S. 437 (1952)..................................................................................................6

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
   688 F.3d 214 (5th Cir. 2012) ....................................................................................8

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ..................................................................................12

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017).......................................................................3

*Quick Techs., Inc. v. Sage Grp. PLC*,
   313 F.3d 338 (5th Cir. 2002) ....................................................................................4

*Reno v. ACLU*,
   521 U.S. 844 (1997)...........................................................................................2, 12

*Sayers Constr., L.L.C. v. Timberline Constr., Inc.*,
   976 F.3d 570 (5th Cir. 2020) ....................................................................................7

*Signature Management Team, LLC v. Doe*,
   876 F.3d 831 (6th Cir. 2017) ..................................................................................15

*Studio W. Prods., Inc v. Does 1-237*,
   2013 WL 12158061 (S.D. Tex. Mar. 11, 2013).....................................................3, 13

*In re Subpoena To Univ. of N. Carolina at Chapel Hill*,
   367 F. Supp. 2d 945 (M.D.N.C. 2005) ..................................................................9, 10

*In re Tagami*,
   2021 WL 5322711 (N.D. Cal. Nov. 16, 2021) .......................................................15

*Talley v. California,*
    362 U.S. 60 (1960) .................................................................................................12

*Torsh, Inc. v. Audio Enchancement, Inc.,*
    661 F. Supp. 3d 596 (E.D. La. 2023) ......................................................................4

*Trawinski v. Doe,*
    2015 WL 3476553 (N.J. Super. Ct. App. Div., June 3, 2015) .................................3

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,*
    487 U.S. 72 (1988) .................................................................................................10

*In re Verizon Internet Srvcs., Inc.,*
    257 F. Supp. 2d 244 (D.D.C. 2003) ........................................................................3

*Zoch v. Daimler, AG,*
    2017 WL 2903264 (E.D. Tex. May 16, 2017), *report and recommendation*
    *adopted*, 2017 WL 9935519 (E.D. Tex. July 5, 2017) .............................................5

**Statutes**

17 U.S.C. § 512(h) ...........................................................................................1, 9, 10, 11

**Other Authorities**

Fed. R. Civ. P. 27 ......................................................................................................10

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

1. Whether this Court lacks personal jurisdiction over X Corp. as required to enforce Petitioner's subpoena, issued *ex parte* under to 17 U.S.C. § 512(h)?

2. Assuming *arguendo* that the Court has personal jurisdiction over X Corp. (which X Corp. disputes), whether Petitioner has satisfied First Amendment safeguards to unmask an anonymous user of the X platform regarding content allegedly posted by that speaker on X via an account with username @BasedSolutions1?

## I.    **INTRODUCTION**

Petitioner seeks to unmask an anonymous speaker who posted content on the X platform, purportedly to sue him or her for alleged copyright infringement. The anonymous speaker has expressed concern that unmasking his or her identity will enable Petitioner to carry out his true intent of doxxing[1] the speaker and seeking "revenge," all while the content at-issue has long been removed from the X platform. Declaration of Jolie Perla ("Perla Decl."), ¶ 7, Ex. A.

Petitioner's Motion nonetheless seeks to compel X Corp. to produce data that could unmask the anonymous user pursuant to a subpoena issued by this Court under Section 512(h) of the Digital Millenium Copyright Act ("DMCA") *before* X Corp. was even aware of this proceeding. There are serious and fatal problems with Petitioner's efforts that require the Motion to be denied.

*First*, the Court lacks personal jurisdiction over X Corp. X Corp. is incorporated in Nevada and headquartered in Bastrop, Texas. Perla Decl., ¶ 4. X Corp. is not a resident of Louisiana, and its only contact with the State of Louisiana is that the X platform is accessible to Louisiana residents, just as it is accessible to individuals in all 50 states and in most countries worldwide. These circumstances are entirely insufficient to establish general or specific personal jurisdiction under well-established Fifth Circuit case law, not to mention case law from federal courts

---

[1] Doxxing is the increasingly prevalent practice of publishing an internet speaker's personally identifiable information on the internet as a form of harassment.

throughout the country. *See*, *e.g.*, *Johnson v. TheHuffingtonPost.com*, 21 F.4th 314, 324 (5th Cir. 2021) ("General jurisdiction for every state where HuffPost is visible would destroy its meaning for HuffPost's home states, to whom that awesome power is properly reserved"); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021) (holding that a Louisiana court lacked personal jurisdiction over a website where Louisiana customers could create accounts, post reviews, and purchase items because there was no evidence that the website purposefully targeted Louisiana residents.).

Regardless, it is Petitioner's burden to show that general or specific personal jurisdiction exists over X Corp. Nothing in the record, nor in the Motion, makes any such showing, and Petitioner has failed to carry his burden. The Motion should be denied for this reason alone.

*Second*, even assuming *arguendo* that the Court has personal jurisdiction over X Corp. (it does not), the Motion fails to satisfy the First Amendment safeguards needed to unmask an anonymous speaker. The United States Supreme Court has long recognized that the right to speak anonymously on the internet, including via social media platforms, is protected by the First Amendment to the U.S. Constitution. *Reno v. ACLU*, 521 U.S. 844, 868 (1997); *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 200 (1999); *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). This does not immunize anonymous speakers from liability for their speech, but it does require that First Amendment safeguards be satisfied before the anonymous speaker can be unmasked, including to avoid a chilling effect that would see people simply not participate in the marketplace of ideas out of fear that they could be unmasked in order to be harassed for expressing unpopular opinions.

Those safeguards, as applied by courts in the Fifth Circuit as well as federal courts throughout the country, are comprised of requiring a petitioner seeking to unmask the anonymous speaker to: (1) make a *prima facie* showing of his or her claim; and (2) demonstrate that the balance of interests favors the petitioner's need for the evidence over the anonymous speaker's interests in remaining anonymous. *See*, *e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175-76 (9th Cir. 2011) (collecting cases nationwide); *Studio W. Prods., Inc v. Does 1-237*, 2013 WL 12158061,

at *1 (S.D. Tex. Mar. 11, 2013) (enumerating the need for courts to "balance the need for disclosure against First Amendment interests" of the anonymous user).

The Motion makes no such showing here. It merely attempts to cast away the First Amendment by arguing, without support, that such a showing is "unnecessary." That runs contrary to decisions from federal courts nationwide, and imperils significantly important core rights under the First Amendment by effectively claiming that anonymous speech does not enjoy these rights. The Motion is incorrect.[2]

The Motion also fails to make any showing that the balance of interests favors Petitioner, i.e., why Petitioner's need for the data to unmask the user outweighs the user's right to anonymity. This is particularly troubling given the anonymous speaker's concerns that his or her personal information, if produced to Petitioner before he or she could secure counsel, would be misused by Petitioner to harass the user and take some form of "revenge."

Put simply, the Court lacks jurisdiction over X Corp. and the Motion appears to not satisfy First Amendment safeguards needed to unmask the anonymous user. X Corp. explained these concerns at length to Petitioner in the weeks leading up to him filing his motion, and urged Petitioner at the very least to pursue his discovery in the proper forum. But Petitioner refused, and has insisted on forcing X Corp., as well as the Court, to unnecessarily expend resources on motion practice that should not be in this district. For these reasons and others, as set forth more fully below, the Motion should be denied.

## II.    ARGUMENT

---

[2] Courts routinely hold that online platforms have standing to assert their users' First Amendment rights, particularly considering individuals often do not have the same resources to defend their rights in this context or are concerned that litigating will in itself unmask them. *See, e.g.*, *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 807 (5th Cir. 2025) ("it is plain that an online platform is not barred by prudential standing when it asserts its users' First Amendment rights…"); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1009 (E.D. Cal. 2017) (holding that website operator had third-party standing to assert First Amendment rights of its site's anonymous users); *Enterline v. Pocono Medical Center*, 751 F.Supp.2d 782, 785 (M.D.Pa. 2008) (same); *McVicker v. King*, 266 F.R.D. 92, 95–96 (W.D.Pa. 2010) (same); *In re Drasin*, 2013 WL 3866777 at *2 (D. Md., July 24, 2013) (same); *In re Verizon Internet Srvcs., Inc.*, 257 F.Supp.2d 244, at 257–58 (D.D.C. 2003) (same); *see also Trawinski v. Doe*, 2015 WL 3476553 at *4–5 (N.J. Super. Ct. App. Div., June 3, 2015) (applying First Amendment standing principles); *Indiana Newspapers, Inc. v. Miller*, 980 N.E.2d 852, 858–59 (Ind. Ct. App. 2012) (same).

**A.    This Court Lacks Personal Jurisdiction Over X Corp.**

**1.    Personal Jurisdiction, Generally**

"For a court to issue a binding judgment against a defendant, it must have both subject matter and personal jurisdiction over the defendant." *Pac v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024) (citing *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231-32 (5th Cir. 2012)). A district court has personal jurisdiction over a nonresident if the forum's long-arm statute creates personal jurisdiction over that nonresident and the exercise of personal jurisdiction comports with federal due process. *Id.* (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

As to Louisiana, the limits of its "long-arm statute are coextensive with constitutional due process limits." *Jackson v. Tanfoglio Guiseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (analyzing Louisiana's long-arm statute in the context of challenge to personal jurisdiction). The personal jurisdiction inquiry thus becomes "whether jurisdiction comports with federal constitutional guarantees," *i.e.*, with the Due Process Clause of the Fourteenth Amendment. *Id.*

The Due Process Clause of the Fourteenth Amendment, in turn, "guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has certain 'minimum contacts' with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Torsh, Inc. v. Audio Enchancement, Inc.*, 661 F. Supp. 3d 596, 600 (E.D. La. 2023) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient minimum contacts will give rise to either specific, 'case-linked' jurisdiction or general, 'all-purpose' jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Each is discussed in turn below.

When jurisdiction is challenged, it is well established that "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant,'" be it personal or general. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002).

Here, the Motion does not and cannot carry its burden. As explained more fully below, the Motion makes no showing that X Corp. is at home in or has sufficient minimum contacts with

Louisiana that could support a finding of personal jurisdiction over X Corp., and the Motion should fail for this reason alone.

## 2. X Corp. is <u>Not</u> Subject to General Jurisdiction in Louisiana

For "general jurisdiction to be present, due process requires that a defendant have 'sufficiently systematic and continuous' contacts with the forum state, such that the defendant feels 'at home' in the forum state.'" *Pace*, 93 F.4th at 898 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). For a corporation, it is "at home where its place of incorporation and its principal place of business are located." *Id.* "These two places 'have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 337 (5th Cir. 2020) (quoting *Daimler AG*, 571 U.S. at 137); *see also Zoch v. Daimler, AG*, 2017 WL 2903264, at \*3 (E.D. Tex. May 16, 2017), *report and recommendation adopted*, 2017 WL 9935519 (E.D. Tex. July 5, 2017) (general jurisdiction requires that the "corporation itself—not its managing agent or subsidiary or affiliate, must be 'at home' in the forum state.").

Importantly, while a corporation might operate in many places, "it cannot be deemed at home in all of them' because unpredictability would follow and jurisdictional rules are meant to 'promote greater predictability.'" *Id.*; *see also Daimler AG*, 571 U.S. at 139 n.20 (the notion that a corporation would be considered "at home" in "every state in which it engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping."). Rather, a corporation that is not a resident in a forum can be subject to general jurisdiction in that forum *only when* its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 138-39). That, however, is an "exceptional case," and it is "incredibly difficult to establish." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). The "textbook" example of an "exceptional case" occurred when a mining corporation located in the Philippine Islands moved its operation to Ohio during World War II. *See Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 448 (1952). General

jurisdiction was proper in Ohio because it became the center of the corporation's wartime activities: the company conducted business there, kept files there, and made key business decisions there. *Id*.

In sharp contrast to that exceedingly rare scenario where the company *de facto* relocated to Ohio, mere business operations that touch a forum have been universally recognized as being insufficient to establish general jurisdiction over a nonresident corporation. For example, it has been recognized by courts that a nonresident's advertising and marketing efforts conducted through social media and visible by individuals in the forum were insufficient to confer general jurisdiction over that nonresident. *Frank*, 947 F.3d at 339 (citing *Jackson*, 615 F.3d at 584). A nonresident defendant's isolated visits to the forum are likewise insufficient. *Id*.

This holds true in the context of corporations that provide platforms such as X Corp. Case law from the Fifth Circuit—consistent with case law from federal courts nationwide—establishes that website providers are *not* subject to general jurisdiction in every state where the website is visible. *See TheHuffingtonPost.com*, 21 F.4th at 323-24; *Admar Int'l, Inc.*, 18 F.4th at 787.[3]

Here, X Corp. is incorporated in Nevada and has its principal place of business in Bastrop, Texas. Perla Decl., ¶ 4. It maintains no offices in Louisiana, it does not have any employees in this State, and the records that Petitioner seeks are not accessible from within this State. *Id.* at ¶ 6. X

---

[3] *See also Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 399 (E.D. Tex. 2022) (holding that NBC Universal did not purposefully avail itself of Texas when it sold cable television programs to subscribers and consumers in Texas and ran a website that was accessible to, but did not specifically target, Texas users); *Cap. Credit Inc. v. Mainspring Am., Inc.*, No. A-19-CV-797-LY, 2020 WL 4043499, at *3 (W.D. Tex. July 17, 2020) (Amazon.com Services, Inc. is not subject to general jurisdiction in Texas even though it does business in the state); *accord Hepp v. Facebook*, 14 F.4th 204, 207-08 (3d Cir. 2021) (district court lacked general jurisdiction over nonresident platform providers Reddit and Imgur, even though, among other things, Imgur purportedly maintained an online store selling merchandise to Pennsylvanians); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) (holding that a South Carolina court lacked personal jurisdiction over an interactive website because it did not target South Carolina residents in particular); *Garner v. Bumble, Inc.*, 2023 WL 6065481, at *6 (N.D. Ill. Sept. 18, 2023) (Illinois lacked general jurisdiction over a nonresident company operating a dating platform that the plaintiff accessed from within the forum state); *Fletcher v. Facebook, Inc.*, No. 2:24-CV-01384-BHH-MHC, 2025 WL 714238, at *4 (D.S.C. Feb. 13, 2025), *report and recommendation adopted*, No. 2:24-CV-1384-BHH, 2025 WL 713777 (D.S.C. Mar. 5, 2025); *Angelillo v. Facebook*, No. 4:23-CV-1078, 2024 WL 4529564, at *6 (M.D. Pa. Oct. 18, 2024), *aff'd*, No. 24-3022, 2025 WL 1189822 (3d Cir. Apr. 24, 2025) (in finding no general jurisdiction, recognizing that "the operation of an interactive website, without more is not so substantial that it may be comparable to being at "home" in a state where it is neither located nor incorporated").

Corp. merely provides the X platform, which is accessible to users in this State—just as it is accessible to users in all 50 states and in most countries worldwide. *Id.* at ¶ 3. These circumstances are a far cry from establishing general jurisdiction over X Corp., and the Motion does nothing to show otherwise (because it cannot). *TheHuffingtonPost.com*, 21 F.4th at 323-24; *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (a railroad company with over 2,000 miles of railroad track and more than 2,000 employees in Montana is not "at home" there when it operates in 28 states and is not "heavily engaged in activity in Montana.").

X Corp. is not subject to general jurisdiction in Louisiana.

### 3.    X Corp. is <u>Not</u> Subject to Specific Jurisdiction in Louisiana

To find specific jurisdiction, three conditions must be met. "*First*, the defendant must 'purposefully avail itself of the privilege of conducting activities in the forum State.' The defendant's ties to the forum, in other words, must be ties that 'the defendant [itself]' purposefully forged. *Second,* the plaintiff's claim 'must arise out of or relate to' those purposeful contacts. A defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain our power to hear it. *Third,* exercising our jurisdiction must be 'fair and reasonable' to the defendant." *TheHuffingtonPost.com*, 21 F.4th at 317-18.

These limits "'derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism.' Put another way, a defendant must have 'fair warning' that his activities may subject him to another state's jurisdiction. That warning permits the defendant to 'structure its primary conduct to lessen or avoid exposure to a given State's courts.'" *Id.*

The existence of the internet notwithstanding, specific jurisdiction still requires purposeful availment—something more than "random, fortuitous, or attenuated contacts." *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475). In other words, "[t]he contacts must be the defendant's own choice." *Ford Motor Co. v. Montana Eighth Judicial District Ct.*, 141 S. Ct. 1017, 1025 (2017). "They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.*

(quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Even under this framework for specific jurisdiction, it is improper, including under Fifth Circuit case law, to find specific jurisdiction over a nonresident corporation merely because it provides an interactive website that is accessible from within this State. *Admar Int'l, Inc.*, 18 F.4th at 786-87. That is consistent with decisions from Courts of Appeals throughout the country. *Id.* (citing with approval *be2LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."), *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state"), and *GTE News Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (rejecting contention that "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with the forum")); *see also NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1379 (Fed. Cir. 2017) ("What is sufficient may vary from case to case, but it cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is 'suit-related conduct . . . creat[ing] a substantial connection with the forum State.'"); *Pervasive Software*, 688 F.3d at 228 ("only contact with Texas is a commercial, interactive website which is accessible globally but available only in the German language. This only coincidentally, and not purposely or deliberately, includes contact with a relatively few German taxpayers who happen to access it from Texas.").

Were the rule otherwise, defendants in internet-related cases would be subject to personal jurisdiction in "every spot on the planet where that interactive website is accessible"—an unjust and absurd result, which courts have roundly rejected. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014).

Here, the Motion makes no attempt to show, let alone argue, that the exercise of specific jurisdiction would be proper. X Corp. is *not* a party to the underlying copyright infringement action

that Petitioner is pursuing (Mot. at 7), and, thus, the cause of action cannot arise out of X Corp.'s contacts with Louisiana. The Motion does *not* argue that X Corp. has engaged in any specific conduct in Louisiana whatsoever, let alone that Petitioner's alleged injuries arise from any such in-state conduct by X Corp. And it does *not* argue that X Corp. has any employees in this state or that X Corp. made any decisions about the operations of the X platform in this State.

The Motion's theory instead seems to be the very thing that the Fifth Circuit and other federal courts nationwide have rejected time and again, i.e., the notion that a nonresident corporation can be subject to specific jurisdiction in Louisiana merely because it operates a globally available platform that happens to be accessible to individuals within this forum. That theory is simply wrong. *TheHuffingtonPost.com*, 21 F.4th at 317-18.

X Corp. did *not* "purposefully direct" any activities relevant to Petitioner's underlying copyright infringement action to Louisiana residents, and there is no showing in the Motion to the contrary. *See also Clemens v. McNamee,* 615 F.3d 374, 376 (5th Cir. 2010); (adopting "purposefully directed" standard from *Burger King Corp.*). There is thus no basis for the Court to find specific jurisdiction over X Corp.

Without general or specific jurisdiction, the Motion fails and should be denied.

### 4.     Louisiana is Not the Proper Venue

Section 512(h) DMCA does not provide for nationwide venue and jurisdiction. *In re Subpoena To Univ. of N. Carolina at Chapel Hill*, 367 F. Supp. 2d 945, 957 (M.D.N.C. 2005) ("*Chapel Hill*") (quashing § 512(h) subpoena served on North Carolina State University ("N.C. State")). Indeed, "[a]llowing private parties to use the power of federal courts to gather private information *ex parte* in absence of litigation or contemplated litigation (*contrast* Fed. R. Civ. P. 27) is an extraordinary event in itself without construing Section 512(h) as being a nationwide venue and jurisdiction statute." *Id*.; *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("the subpoena power of a court cannot be more extensive than its jurisdiction").

*Chapel Hill* is illustrative. In that case, the court sitting in the Middle District of North Carolina considered, among other issues, whether a subpoena from that district could be properly issued to N.C. State, located in the Eastern District of North Carolina. 367 F. Supp. 2d at 956. The subpoena sought data from Jane Doe, who moved to quash the subpoena on the basis that both service and venue were improper. *Id.* The *Chapel Hill* court agreed. It expressly that Section 512(h) does *not* authorize every district court to exercise jurisdiction by compelling action from persons outside the district in which they sit. *Id.* at 957. The *Chapel Hill* court made clear that it would *not* infer a grant of jurisdiction for any district court to compel action from nonresidents without explicit authorization from Congress. *Id.* As such, the court quashed the subpoena for lack of jurisdiction and improper venue, where N.C. State was located in another district. The same should hold true in this case.

Here, X Corp. here is a Nevada corporation that is headquartered in Bastrop, Texas. X Corp. is clearly and indisputably located outside of this district, and to find otherwise would be to broaden this Court's subpoena power beyond its jurisdiction.

Moreover, this Court correctly acknowledged in a prior Order—before X Corp. was served with any papers in this case (Dkt. 10-5)—that some courts have found DMCA subpoenas are improperly issued where the Court lacks personal jurisdiction over the subpoenaed party. *See In re: DMCA Section 512(h) Subpoena to Facebook, Inc*., 2015 WL 12805630, at *7 (S.D. Tex. Nov. 18, 2015) ("In sum, the rule requires Requestor to go to a court in the district in which Facebook 'resides' to obtain a § 512(h) subpoena."); *Chapel Hill*, 367 F. Supp. 2d at 957 ("In the instant case, Section 512(h) says that the copyright owner or agent can seek a subpoena from any district court, but does not say that every district court has jurisdiction to issue a subpoena compelling action from persons outside of the district."). That is the precise circumstance here, and nowhere does the Motion attempt to explain or justify Petitioner's decision to seek a subpoena from this Court, rather than pursue a DMCA subpoena from an appropriate Nevada or Texas court, which X Corp.'s counsel repeatedly urged Petitioner to do. Instead, Petitioner has decided to expend X Corp.'s and the Court's resources on motion practice.

At most, the Motion cites to *Dotson v. Edmonson* in efforts to support Petitioner's insistence on proceeding in this district, but the Motion's reliance on that case is misplaced. There, the petitioner sought to compel a non-party, the Louisiana State Police Department, to produce a policy manual. *Dotson*, 2017 WL 11535244, at *1 (E.D. La. Nov. 21, 2017). The police department in that case, however, did *not* assert any objections to the court's exercise of personal jurisdiction. Nor could it, as the Louisiana State Police reside in Louisiana. *Id.* That unto itself renders *Dotson* inapplicable here, where X Corp. has asserted jurisdictional defenses. And the Motion is simply incorrect in attempting to characterize Dotson as reflecting an instance where a subpoena was issued from a court in this District and enforced against a Texas nonresident and non-party.

## B.    The Court Has Not Determined Whether Any First Amendment Safeguards for Unmasking the Anonymous User Are Applicable Here

The Motion separately fails because it does not satisfy widely recognized First Amendment safeguards for unmasking anonymous speakers.

### 1.    The First Amendment Protects the Ability to Speak Anonymously on the Internet

The development of the internet and connected devices and services over the past several decades, and in particular the advent and proliferation of social media platforms, has not changed the core First Amendment rights enjoyed by adults and minors alike. *Brown v. Entm't Merch. Ass'n,* 564 U.S. 786, 790 (2011) ("'[T]he basic principles of freedom of speech . . . do not vary' with a new and different communication medium."). It has long been recognized by the United States Supreme Court, including before the advent of the internet, that "[a] fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham*, 582 U.S. at 104.

With the advancement of technologies, places to engage in protected First Amendment activities have been recognized to include far more than the analog realm where "a street or a park is a quintessential forum for the exercise of First Amendment rights." *Packingham*, 582 U.S. at 104. Places where individuals can exercise their First Amendment rights have been recognized as encompassing "cyberspace—the 'vast democratic forums of the internet' in general, *Reno*, 521

U.S. 868, and social media in particular." *Packingham*, 582 U.S. at 104. Social media platforms have billions of users, offer a "relatively unlimited, low-cost capacity for communication of all kinds," *Id.* at 98 (citing *Reno*, 521 U.S. at 870), and "users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.'" *Id*. at 105 (citing *Reno*, 521 U.S. at 870).

In *Reno*, the Court noted that "[t]hese websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.'" *Packingham*, 582 U.S. at 107 (quoting *Reno*, 521 U.S. at 870).

The Court has further recognized that the First Amendment protects not only anonymous speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Talley v. California*, 362 U.S. 60, 64–65 (1960), and the right to anonymously receive information, *Lamont v. Postmaster General*, 381 U.S. 301, 305 (1965), but also the right to speak anonymously on the internet, including on social media platforms. *Buckley*, 525 U.S. at 200 (1999); *Reno*, 521 U.S. at 870 (finding there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to online speech); *Brown,* 564 U.S. at 790; *ACLU v. Gonzales*, 478 F. Supp. 2d 775, 806 (E.D. Pa. 2007) (finding lack of anonymity will chill users' ability to engage with "sensitive, personal, controversial, or stigmatized content"); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 236 (4th Cir. 2004) (finding without anonymity, "the stigma associated with the content of [certain] sites may deter adults from visiting them"); *see also NetChoice v. Carr*, 2025 WL 1768621, at *15 (N.D. Ga. June 26, 2025) (recognizing well-established First Amendment right to speak anonymously on social media platforms); *see generally Johnson v. The Town of Prosper, Texas*, No. 4:23-cv-650, Am. Mem. Op. and Order, ECF 35 at 36 (E.D. Tex. July 1, 2025) ("anonymous speech is protected by the First Amendment").

This does not mean that an anonymous speaker's statements are immune from liability. But it does mean that, to unmask the anonymous user in the first instance—and to do so in a manner that does not risk chilling speech—First Amendment safeguards must first be satisfied before the

speaker can be unmasked. *See*, *e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175-76 (9th Cir. 2011) (collecting cases nationwide); *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (determining whether procedural safeguards for protected speech were satisfied before ordering the unmasking of an anonymous speaker); *Cor Clearing, LLC v. Investorshub.com, Inc.*, 2016 WL 3774127, at *3 (N.D. Fla. May 11, 2016) ("In the context of unmasking an anonymous speaker, a court must conduct a preliminary screening to ensure that there is a viable claim that justifies overriding an asserted right to anonymity.") (internal citations and quotation marks omitted).

It follows that a request to unmask an anonymous online user based on anonymously posted content—which is precisely what Petitioner seeks here (Dkt. 15-1)— First Amendment scrutiny must be satisfied. Indeed, courts in the Fifth Circuit have clearly enumerated the need for First Amendment considerations when seeking to subpoena identifying information for anonymous internet users. *See e.g. Dougherty v. U.S. Dep't of Homeland Sec.*, 2022 WL 20717365, at *1 (S.D. Tex. Jan. 19, 2022) (noting "that substantive First Amendment issues may exist as to the subpoena directed at Twitter (now X Corp.) to obtain the identity of an anonymous Twitter account user"); *Studio W. Prods., Inc.*, 2013 WL 12158061, at *1 (enumerating the need for courts to "balance the need for disclosure against First Amendment interests" of the anonymous user).

Other courts have likewise held that before a service provider such as X Corp. can be compelled to produce information that could unmask the identity of an anonymous speaker, the plaintiff must *first* make a "concrete" prima facie showing of his asserted cause of action.[4]  *See Arista Recs., LLC*, 604 F.3d at 118; *K-Beech, Inc. v. Does 1-57*, 2011 WL 5597303, at *2–4 (M.D.

---

[4] The Fifth Circuit has not opined on this issue. However, the majority of the courts addressing the requirements for unmasking anonymous speakers apply a similar standard whereby the plaintiff must make a prima facie showing of their cause of action, supported by evidence, before a platform is ordered to disclose the identity of an anonymous speaker.  *See, e.g., Arista Recs., LLC*, 604 F.3d at 118 (holding that a petitioner must make a "concrete showing of a prima facie claim of actionable harm" before a service provider may be compelled to unmask an anonymous speaker); *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005) ("[T]o obtain discovery of an anonymous defendant's identity . . . plaintiff must submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question."); *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760–61 (App. Div. 2001) (same); *Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231, 241 (Cal. Ct. App. 2008) (same). The Court should not deviate from requiring the same here.

Fla. Nov. 1, 2011), *report and recommendation adopted*, 2011 WL 5597293, at *1 (M.D. Fla. Nov. 17, 2011) (considering, in the context of a Rule 45 subpoena to discover a Doe defendant's identity, whether plaintiff made a concrete showing of a prima facie claim of copyright infringement); *Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088, 1093 (W.D.Wash. 2001).

And once that showing is made, a court must still then balance the need for discovering the identifying information with the First Amendment interest of remaining anonymous. *See Dendrite Int'l, Inc*., 775 A.2d at 760–61 ("[A]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (holding that although plaintiffs presented a "real evidentiary" basis for their claim as to the anonymous account holder, the "First Amendment rights outweigh[ed] [their] need for the requested information").

Though there is no definitive standard adopted by the Fifth Circuit for determining if or when the right to discovery should trump First Amendment considerations, many courts in other Circuits have acknowledged that the First Amendment safeguards *must* be analyzed even after a court issues a subpoena under the DMCA to unmask anonymous users accused of alleged copyright infringement. *See*, *e.g.*, *Music Grp. Macao Com. Offshore Ltd.*, 82 F. Supp. 3d at 983 ("a party seeking to discover the identity of an anonymous speaker must first 'persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff . . . .'"); *In re Tagami*, 2021 WL 5322711, at * 4 n.2 (N.D. Cal. Nov. 16, 2021) (in the context of seeking to unmask an anonymous speaker on the internet under 28 U.S.C. § 1782, the analysis "also considers the First Amendment . . . ."); *In re DMCA Section 512(h) Subpoena to YouTube* (*Google*, *Inc.*), 581 F. Supp. 3d 509 (S.D.N.Y. 2022) (noting qualified privilege protecting anonymity and granting motion to quash filed by anonymous Doe); *Signature Management Team, LLC v. Doe*, 876 F.3d 831, 835-36 (6th

Cir. 2017) (recognizing First Amendment right to anonymous speech on the Internet).

> **2.**    **The Motion Does Not Satisfy First Amendment Safeguards to Unmask the User**

Assuming *arguendo* that the Court finds that it has jurisdiction over X Corp. (it does not), the standards set forth above—as adopted by other federal courts, including those within the Eleventh Circuit—are appropriately applied here to ensure that important First Amendment rights are not trammeled. This is particularly important where the user behind the account at-issue here was provided notice of Petitioner's subpoena, and contacted X Corp. to ask that it not disclose data unmasking him while he seeks legal counsel. Perla Decl., ¶ 7, Ex. A. Indeed, that individual contacted X Corp. after being provided notice of the subpoena and stated that he "did not download the video from his X account," and that Petitioner purportedly wants to "reveal m[y] personal information [i.e., doxx the user] and is only doing this for his pettiness and revenge." *Id.*

These are serious concerns. This individual may have additional context that X Corp. does not, and that could shed light on reasons that maintaining anonymity are important.

This was explained to Petitioner before the Motion was filed. But nothing in the Motion and nothing in the record makes any attempt to satisfy these important First Amendment safeguards. The Motion merely argues, without support, that conducting a First Amendment analysis would be "unnecessary" (Mot. at 10), and thus encourages the Court to cast aside First Amendment safeguards that other courts nationwide have recognized are essential in this context to protect free speech and to avoid a chilling effect on anonymous speakers' participation in the marketplace of ideas.

The Motion is incorrect. First Amendment safeguards protecting the long-recognized right to speak anonymously, including on the internet, cannot be so cavalierly disregarded, particularly where the purportedly infringing content has already been removed (Mot. At 9) and the anonymous user has expressed concern about being unmasked.

Moreover, the Motion says nothing to explain why under these circumstances (particularly with concern from the user about being unmasked) about the balance of interests purportedly

favoring Petitioner. That is an important aspect of this analysis, and in all cases asking courts to authorize a subpoena to unmask an anonymous speaker, the constitutional protections afforded to anonymous speech require courts to determine whether "the need to disclose the Doe Defendants' identities outweighs any First Amendment interest that the Doe Defendants might have in remaining anonymous." *Dish Network L.L.C. v. Motasaki*, 2020 WL 10786543, at *1 (S.D. Tex. Jun. 26, 2020). In making a determination as to the anonymous speaker's privacy interest, on numerous occasions, courts have even *sua sponte* paired protective orders with such requests to unmask. *See, e.g.*, *Hunter Killer Prods., Inc. v. Boylan*, 2021 WL 2878558, at *3 (W.D. Tex. Jan. 28, 2021); *Elargo Holdings, LLC v. Doe-68.105.146.38*, 2016 WL 10516727, at *5 (M.D. La. May 31, 2016) ("the Court enters the following Protective Order *sua sponte* . . . . [t]o protect the respective interests of the parties").

This balancing of interests is an inherently judicial function, and, in this context, can take into account the admissibility and strength of a petitioner's evidence and any necessary privacy protections when seeking to unmask the anonymous user. *See, e.g.*, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (holding that an appellate court must "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.").

Put simply, X Corp. does not believe a sufficient demonstration of balancing has been made in the Motion under these circumstances, and X Corp. thus raises these issues to the Court for its consideration.

## III.    <u>CONCLUSION</u>

X Corp. respectfully requests that the Court deny the Motion for the reasons set forth above.

Dated:   July 29, 2025

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Respectfully submitted,

*/s/ Valerie Theng Matherne*
**VALERIE THENG MATHERNE (LSBA #25898)**
**CHLOE L. KRAKE (LSBA #41301)**
**COURINGTON, KIEFER, SOMMERS,**
**MATHERNE & BELL, L.L.C.**
P. O. Box 2350
New Orleans, LA 70176
616 Girod Street
New Orleans, LA 70130
Telephone: (504) 524-5510
Facsimile:  (504) 524-7887
Email:  vmatherne@courington-law.com
        ckrake@courington-law.com

*AND*

**J. JONATHAN HAWK, Pro Hac Vice Pending (SBN 254350)**
jhawk@mwe.com
**ARI SWAZER, Pro Hac Vice Pending (SBN 359884)**
aswazer@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone:  +1 310 277 4110
Facsimile:  +1 310 277 4730

***Attorneys for Respondent X CORP.***