**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE DMCA SUBPOENA TO X CORP.          CIVIL ACTION NO.: 25-mc-474

SECTION: L(1)

**REPLY MEMORANDUM[1] IN SUPPORT OF**
**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

Petitioner's original motion was prepared in response to a set of boilerplate, scattershot objections from X that gave little indication of the arguments X would ultimately advance in opposition. Petitioner was thus left to anticipate and address a wide range of potential defenses in its original motion. This reply addresses X's extensive, newly articulated arguments within the limited confines of a reply memorandum.

In plain terms, this motion arises because an X user, "@BasedSolutions1," copied and reuploaded Petitioner's original content and, in the most vulgar possible terms, publicly refused to remove it. [2] To date, X does not contend that the infringing content was lawful. Rather than denying the infringement, X's opposition relies on, primarily, objections to the manner in which Petitioner requested the identifying information that the DMCA expressly entitles him to obtain.

In its opposition, X accuses Petitioner of "insisting" on and "forcing" motion practice. Petitioner wishes none of this were required. The need for this motion arises entirely from X's self-imposed requirement that even undisputed DMCA violations receive a court order before producing user information: X's *pro hac* counsel has stated in other proceedings, "[X], 'as a matter

---

[1] Per Local Rule 7.5
[2] Doc. 15-1, p. 1-4.

of course' requires parties seeking identifying information for X accounts to obtain a court order, thus necessitating the instant Motion."[3]

Indeed, in *Agdal*, X was admonished for the exact same conduct that it undertakes here: In that case, X also refused to comply with a DMCA subpoena seeking only subscriber information for an account that posted infringing content, based on the exact same, lengthy, generalized insistence that a court must first conduct a First Amendment review.  The Court rejected X's "blanket policy" of withholding subscriber information absent a court-order:

*As a preliminary matter, the Court rejects X's assertion that it is proper to refuse to comply with a lawfully issued subpoena and to insist on a "First Amendment review" by the Court where it does not have a good faith belief that the requested disclosures will actually violate the First Amendment. X is, in essence, requesting an advisory opinion to shield itself from potential liability. Under Article III of the U.S. Constitution, however, federal courts do not have jurisdiction to issue advisory opinions.[4]*

Noting that X had no good-faith basis to believe disclosure would violate the First Amendment, the Petitioner's motion to compel was granted, and X was ordered to comply.

Although *Agdal* was rendered just two months before Petitioner requested issuance of a subpoena from this Court, X continues what appears from federal filings in other jurisdictions to be a troubling pattern of stonewalling to protect infringing users from liability. Here, Petitioner attempted service first at X's former California headquarters, then reissued the subpoena to X's Bastrop, Texas headquarters per X's own published guidance for seeking user information.[5] Process servers were met with "hostility" from on-site security who refused to accept service.[6] Service was ultimately perfected through X's registered agent. Throughout this process, X did not

---

[3] See *Agdal v. X Corp. In Interest to Twitter, Inc.,* 24-MC-80266-JCS, 2025 WL 81594, at *2 (N.D. Cal. Jan. 13, 2025) ("In response to the Subpoena, X refused to produce the requested information, informing Agdal's counsel that "as a matter of course" it requires parties seeking identifying information for X accounts to obtain a court order, thus necessitating the instant Motion.").

[4] *Id.* at 2.

[5] https://help.x.com/en/rules-and-policies/x-law-enforcement-support#7

[6] Doc. 10 and exhibits thereto.

meaningfully engage with Petitioner or respond until June 2, 2025, when it delivered only boilerplate objections and a blanket refusal to comply.

X could have resolved this matter at any point by producing the information to which Petitioner is legally entitled under the DMCA. Instead, X chose the most dilatory path—refusing compliance without a good faith basis for doing so, offering only cursory objections, and forcing motion practice. Or, X could also have filed a motion to quash, a direct and efficient procedure, if it truly believed the subpoena improper, and this would have brought the issues raised in X's opposition to a finer point months ago. Instead, X opted for piecemeal delay and an expansive opposition designed to prolong a process that could have been resolved through other means months ago. The opposition does not dispute the core infringement or the propriety of the requested information; it reflects only a pattern of delay and procedural gamesmanship that has compelled this pro se Petitioner, at significant personal cost, to seek this Court's intervention.

For the following reasons, Petitioner requests that this Court grant its Motion:

## I.    The First Amendment Does Not Protect Infringing, Anonymous Speech

X opens its First Amendment section with nearly four pages of jurisprudential analysis the general right to speak anonymously on the internet.[7] Petitioner does not dispute any of these principles and questions whether such a broad discussion was necessary. Petitioner agrees that anonymous speech is generally protected under the First Amendment.  However, "[p]arties may not use the First Amendment to infringe the intellectual property rights of others."[8]  This is not a case about commentary, criticism, or participation in the marketplace of ideas. It is about a user who copied and reposted Petitioner's original content, without alteration, and then publicly refused to remove it. That conduct is classic copyright infringement, not protected expression.

---

[7] Doc. 25, p. 18-22.
[8] *Art of Living Found. v. Does*, No. C10-05022, 2011 U.S. Dist. LEXIS 88793, at *8 (N.D. Ca. Aug. 10, 2011).

X continues its argument with a histrionic mischaracterization of Petitioner's position. According to X, the Motion "merely argues, without support, that conducting a First Amendment analysis would be 'unnecessary,' and thus encourages the Court to cast aside First Amendment safeguards … to avoid a chilling effect on anonymous speakers." That is not what the Motion says. What Petitioner actually argued is that a First Amendment analysis is unnecessary *in this case* because the underlying conduct is unprotected copyright infringement. As the Motion explained:

> *"Because X has already made a determination that the conduct violated the DMCA, this satisfies the requirement for a prima facie case of infringement for the subpoena to issue. This is not a case of questionable fair use or free speech concerns; it is an instance of straightforward copyright infringement confirmed by the service provider and unwisely admitted to by the infringing user – this conduct is not protected by the First Amendment. These facts distinguish this case from decisions cited by X ... Here, the evidentiary predicate is already established ...* **rendering <u>further First Amendment analysis unnecessary.</u>"**[9]

In other words, Petitioner does not "cast aside" First Amendment safeguards, but correctly identifies that the law holds that those safeguards are not implicated by a case of obvious, admitted copyright infringement.  Plainly stated, "the First Amendment does not protect anonymous speech that infringes copyright."[10]  When a party seeks to discover the identity of an anonymous speaker in connection with a DMCA subpoena, "an analysis under copyright law and fair use will do" rather than a broad, First Amendment "anonymous speech approach".[11]  This is because "copyright law contains built-in First Amendment accommodations."[12]  It is clear that "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."[13]

---

[9] Doc. 15-1 at 10, emphasis added.
[10] *In re DMCA Subpoena to Reddit, Inc.,* 441 F.Supp.3d 875, 882 (N.D. Cal.2020).
[11] *Id.* at 882-883.
[12] *Id.* at 882 (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003)).
[13] *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010).

Indeed, X's counsel is well-aware of this, because X unsuccessfully made this same argument in *Agdal, supra*, where the court found: "where the anonymous speech at issue constitutes copyright infringement or relates to illegal activity, some courts have concluded that a First Amendment analysis can be dispensed with altogether while others have concluded that consideration of First Amendment concerns is still appropriate."[14]   The court continued: "Likewise, some courts have found that no First Amendment review need be conducted where a subpoena seeks only basic subscriber information about an anonymous Internet speaker and compliance will not reveal any speech on the part of the account holder."[15]

The first prong of X's own two-part framework requires a prima facie showing of infringement. That standard is easily met here. X removed the infringing content pursuant to Petitioner's DMCA notice, implicitly acknowledging it was infringing and not subject to fair use. The infringing user openly admitted to reposting the work without authorization. Courts, including *Agdal*, recognize that such evidence satisfies the threshold for unmasking under the DMCA.   The second prong—the balancing of interests—overwhelmingly favors Petitioner. The anonymous user here is not engaging in commentary, criticism, or political expression. He simply copied Petitioner's original work, reposted it without authorization, and refused to remove it.   Petitioner has a clear statutory right under the DMCA to obtain the infringer's identity and pursue remedies.

X points only to the a generalized fear of "doxxing," without any concrete evidence of harm or a legitimate privacy interest. Such speculative concerns cannot outweigh a right expressly recognized by statute and repeatedly enforced by the courts.  See *Smythe v. Does 1-10*, CV 15-4801-R, 2015 WL 12819174, at 1 (C.D. Cal. Nov. 17, 2015) ("An assertion of anonymity for fear of being connected to potentially illegal action is unpersuasive.")  Not only have courts held that

---

[14] *Agdal, supra,* at 4.
[15] *Id. at 5.*

a user cannot reasonably expect to remain anonymous while knowingly engaging in violative or illegal activity,[16] but this argument is baseless and insulting. Petitioner is an attorney in good standing, acting in his own right, pursuing a lawful subpoena under the DMCA to seek redress or to determine whether such redress is practical—not to play pranks on the internet. Here, the infringing user assumed the risk that his identity could be revealed through lawful process when he chose to repost Petitioner's copyrighted content and then openly refused to remove it.

## II.    Louisiana is a Proper Forum and This Court Has Jurisdiction to Enforce the Subpoena

X devotes substantial briefing to its argument that this Court lacks jurisdiction and is an improper forum for enforcement of Petitioner's DMCA subpoena. Petitioner disagrees on the following grounds:

### a.  Waiver

X has waived an objection to jurisdiction and forum, as "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)."[17]   Petitioner beseeches this Court to examine the propriety of X's cursory written objections, failure to move to quash, and – as *Agdal* characterized it – failure to make a good faith argument to comply with the DMCA together as conjunctive bases for waiver. X's written objections to the subpoena were, for the most part, in the form of a low-effort, "copy-paste" document that did not contain jurisdictional objections.[18] **Indeed, the word "jurisdiction" does not even appear in these objections.**[19] X's cursory statement that "this action is more properly brought in Texas" is, at most, a venue objection.  It does not assert that this Court lacks personal jurisdiction over X, identify the applicable rule or

---

[16] See *Smyth* and *Agdal*, supra.
[17] *Ford Motor Co. v. Versata Software, Inc.*, 316 F.Supp.3d 925, 932 (N.D. Tex.2017).
[18] Doc. 15-1, Ex. 1.
[19] *Id.*

law, or provide supporting law or reasoning, only that "this action is more properly" brought in Texas.[20] That's it. X raised no jurisdictional objections and offered no meaningful legal analysis nor authority in support.

The requirement of personal jurisdiction can be waived.[21] X's one-liner about Texas being "more proper" is, in and of itself, an independent basis for waiver. Courts in this Circuit make clear that non-party objections under Rule 45 are held to the same standard as Rule 34: They must be stated with specificity, supported by reasons, and indicate whether any responsive materials are being withheld.[22] Generalized, boilerplate, or unsupported objections are improper and do not preserve an issue for later motion practice. As the *Versata Software, Inc.* court held:

This means that a non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"; and that the explanations in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), of what is required to make proper objections and how to properly respond to discovery requests apply equally to non-parties subject to a Rule 45 subpoena.[23]

X's initial "scattershot" objections, consisting of cursory, non-specific statements without meaningful explanation or support, fall squarely within this category. Petitioner should not be forced into six months of motion practice to divine the true nature of X's arguments, only to have X unveil its substantive defenses for the first time in opposition to this motion. Allowing X to only now raise these objections would reward dilatory conduct and undermine Rule 45's expectation of prompt, forthright objections. Equitably speaking, it is fundamentally unfair to use a threadbare

---

[20] *Id.* at p. 1: "X Corp. objects to the Subpoena on the basis that this is the improper forum to bring this action. X Corp. is headquartered in Bastrop, Texas, and thus, this action is more properly brought there."
[21] *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1992).
[22] See *Versata Software, Inc., supra.*
[23] *Id.* at 932.

objection to the forum from a piece of correspondence as a placeholder for X to later substantiate one vague sentence with pages and pages of law and argument after Petitioner has been forced, through X's own, self-imposed, not-in-good-faith requirement to obtain a court order for basic user information in all instances of blatant copyright violation. Petitioner was forced to endure months of delay and draft a motion to compel simply to learn that X intended to make a fully developed jurisdictional argument only in its opposition brief. This objection should be deemed waived.

### b. Jurisdictional and Forum Issues

Even if the jurisdictional objection were not waived, there are sound bases for this Court's jurisdiction over this subpoena. Section 512(h) subpoenas are a narrow statutory mechanism designed for efficient enforcement, and the minimal steps required for X's compliance—sending Petitioner the subscriber's basic contact information by email—pose no meaningful due process concern. X Corp. asserts that this Court cannot compel compliance because X is headquartered in Texas and incorporated in Nevada, relying heavily on *In re Subpoena to University of North Carolina at Chapel Hill*.[24] Petitioner concedes that *Chapel Hill* presents a facially challenging case because it declined to enforce a §512(h) subpoena against a nonresident service provider. However, *Chapel Hill* involved different facts and a different legal approach in a different circuit.

Factually, *Chapel Hill* involved a § 512(a) "conduit" service provider, not a § 512(c) hosting provider like X.[25] Chapel Hill merely provided transitory network access to students engaged in peer-to-peer file sharing; it did not host, store, or serve any infringing files.[26] The court there emphasized that § 512(h) does not apply to conduit ISPs: "It is of more than passing interest

---

[24] 367 F. Supp. 2d 945 (M.D.N.C. 2005).
[25] *Id.*
[26] *Id.*

that Congress thought it necessary to provide a separate definition to cover Section 512(a) service providers. As will be seen in conjunction with the discussion of the subpoena provisions of Section 512(h), Congress created a subpoena mechanism that, on its face, does not seem to apply to Section 512(a) providers."[27]   By contrast, § 512(h) was expressly designed for use against hosting providers that store infringing material and already participate in the DMCA's notice-and-takedown framework. X possesses the basic subscriber information needed to identify the infringer. Unlike in *Chapel Hill*, this case involves the narrow, ministerial nature of § 512(h) compliance. The subpoena requires no travel, no deposition, and no physical presence in Louisiana. Compliance is an electronic act that imposes no meaningful burden and raises no due process concern. This straightforward § 512(c) scenario falls squarely within the statutory mechanism Congress set forth in § 512(h).

Legally, *Chapel Hill* imported a state-style personal jurisdiction framework, effectively treating a federal subpoena like a state subpoena issued under a state long-arm statute, as X does in its briefing as well.  Petitioner submits that *Chapel Hill*'s reasoning is neither binding nor persuasive in this Court, particularly in light of Fifth Circuit precedent.  The Fifth Circuit has made clear that in federal-question cases involving federal subpoena power and domestic parties, due process is satisfied by national contacts, not by a state-by-state analysis. In *FTC v. Jim Walter Corp.*,[28] the court held that a federal subpoena may be enforced in a distant district against a U.S. corporation without offending due process, emphasizing that the Fifth Amendment inquiry looks to contacts with the United States as the relevant sovereign and that inconvenience alone does not establish a constitutional bar. Similarly, in *Busch v. Buchman*,[29] the Fifth Circuit reaffirmed that

---

[27] *Id.* at FN2.
[28] 651 F.2d 251 (5th Cir.1981).
[29] *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir.1994).

where Congress authorizes enforcement in a federal forum and the respondent is a domestic corporation, minimum contacts with the United States suffice; traditional notions of fair play and substantial justice are not offended merely by requiring electronic compliance in another district.

This principle applies with even greater force here. Section 512(h) is a narrow federal mechanism expressly designed to permit copyright holders to obtain subscriber information expeditiously from service providers anywhere in the United States. There is no physical production, no travel, and no meaningful burden—X need only transmit basic subscriber contact information that is already in its possession. Under Fifth Circuit precedent, that minimal obligation is fully consistent with due process.

### c. Alternative Motion to Transfer

Should the Court ultimately determine that it lacks jurisdiction to enforce this subpoena, Petitioner respectfully requests transfer to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1406(a). Transfer is the preferred remedy where a case is filed in a district with venue or jurisdictional defects, as it preserves the action without the unnecessary costs and prejudice of dismissal and refiling.[30]

Respectfully submitted,

**/s/ James J. Reeves II**
**JAMES J. REEVES II (#32643)**
639 Loyola Avenue, Suite 1800
New Orleans, Louisiana 70113
Telephone: (504) 336-2880
Facsimile: (504) 336-2342
Email: jreeves@mmkfirm.com
*Petitioner*

---

[30] See *Williams v. Licari*, 2024 WL 3292823, at *6–7 (E.D. Tex. July 3, 2024).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion has been served on counsel for X Corp. via email and the CMECF system on August 1, 2025.

<u>**/s/ James J. Reeves II**</u>
**JAMES J. REEVES II**