# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE DMCA § 512(h),
SUBPOENA TO X CORP.

CIVIL ACTION NO.: 2:25-mc-00474

JUDGE:        ELDON E. FALLON

MAGISTRATE:   DONNA PHILLIPS
                CURRAULT

HEARING DATE: September 3, 2025

HEARING TIME: 9:00am

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION OF NON-PARTY X CORPORATION ("X CORP")
## TO QUASH PETITIONER'S SECTION 512(H) SUBPOENA

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     Relevant factual and procedural background..................................................4

      A.     Petitioner's DMCA Subpoena Seeks to Unmask an Anonymous Speaker ......4

      B.     Petitioner Demanded Complete Capitulation on Less than 24 Hours Notice
           Before Filing a Motion to Compel...................................................................5

      C.     X Corp. Attempted to Meet And Confer to Resolve Issues...............................6

III.    ARGUMENT ........................................................................................................8

      A.     This Court Should Quash the Subpoena Because this Court Lacks Personal
           Jurisdiction Over X Corp. ................................................................................8

           1.     Personal Jurisdiction, Generally ...........................................................8

           2.     X Corp. is Not Subject to General Jurisdiction in Louisiana................9

           3.     X Corp. is *Not* Subject to Specific Jurisdiction in Louisiana .............11

           4.     Louisiana is *Not* the Proper Venue ....................................................14

           5.     X Corp. Has *Not* Waived Its Objections to Personal Jurisdiction .......15

      B.     The Court Should Quash the Subpoena Because It Impermissibly Seeks
           Compliance More Than 100 Miles from X Corp.'s Offices in Texas and
           Place of Incorporation in Nevada ...................................................................18

      C.     The Court Has Not Determined Whether Any First Amendment Safeguards
           for Unmasking the Anonymous User Are Applicable Here ...........................19

           1.     The First Amendment Protects the Ability to Speak Anonymously
              on the Internet ...................................................................................19

           2.     The First Amendment Protections Apply With Equal Force in the
              Context of DMCA Subpoenas ...........................................................23

           3.     Petitioner Has Not Satisfied the First Amendment Safeguards...........24

IV.    CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Gonzales*,
   478 F. Supp. 2d 775 (E.D. Pa. 2007) ......................................................................19

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
   18 F.4th 783 (5th Cir. 2021) ...................................................................1, 11, 12

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ..................................................................................13

*Angers v. Franco*,
   No. 2:24-cv-00688-BSL-DPC, Dkt. 39, Order .............................................15, 16

*In re Anonymous Online Speakers*,
   661 F.3d 1168 (9th Cir. 2011) ...........................................................2, 21, 23

*Arista Recs., LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010).....................................................................21, 22

*Baugher v. GoDaddy.com LLC*,
   2021 WL 4942658 (D. Ariz. Oct. 22, 2021) .........................................................23

*Bayou Steel Corp. v. M/V Amstelvoom*,
   809 F. 2d 1147 (5th Cir. 1987) ..............................................................................15

*Benchmark Ins. Co. v. Johnson Bros. Constr., LLC*,
   2015 WL 12712072 (W.D. Tex. May 26, 2015) ...................................................19

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017).............................................................................................11

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984).......................................25

*Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*,
   104 F. App'x 376 ....................................................................................................16

*Brown v. Entm't Merch. Ass'n*,
   564 U.S. 786 (2011).........................................................................................19, 20

*Buckley v. Am. Const. L. Found.*,
   525 U.S. 182 (1999)...........................................................................................2, 20

*Cap. Credit Inc. v. Mainspring Am., Inc.*,
    2020 WL 4043499 (W.D. Tex. July 17, 2020) .......................................................................11

*Clemens v. McNamee*,
    615 F.3d 374 (5th Cir. 2010) .................................................................................................13

*Cor Clearing, LLC v. Investorshub.com, Inc.*,
    2016 WL 3774127 (N.D. Fla. May 11, 2016) .......................................................................21

*In re Correra*,
    589 B.R. 76 (Bankr. N.D. Tex. 2018).....................................................................................15

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)............................................................................................................9, 10

*Dean v. Akal Security, Inc.*,
    No. 1:18-mc-00033, Minutes and Mem. Order, ECF 30 (W.D. La. Apr. 8,
    2019) .......................................................................................................................................17

*Dish Network L.L.C. v. Motasaki*,
    2020 WL 10786543 (S.D. Tex. Jun. 26, 2020)......................................................................25

*In re DMCA Section 512(h) Subpoena to Facebook, Inc.*,
    2015 WL 12805630 (S.D. Tex. Nov. 18, 2015) .....................................................................14

*In re DMCA Section 512(h) Subpoena to YouTube* (*Google, Inc.*),
    581 F. Supp. 3d 509 (S.D.N.Y. 2022)....................................................................................22

*Doe 1 v. Baylor Univ.*,
    2019 WL 2462799 (W.D. Tex. Mar. 28, 2019) ......................................................................18

*Doe v. 2TheMart.com Inc.*,
    140 F.Supp.2d 1088 (W.D.Wash. 2001).................................................................................22

*Dougherty v. U.S. Dep't of Homeland Sec.*,
    2022 WL 20717365 (S.D. Tex. Jan. 19, 2022) ......................................................................21

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
    46 F.4th 226 (5th Cir. 2022) ..................................................................................................10

*Elargo Holdings*,
    *LLC v. Doe-68.105.146.38*, 2016 WL 10516727 (M.D. La. May 31, 2016).........................25

*Fernandez v. Eng. & Insp. Srvcs., LLC*,
    No. 2:23-cv-00057-BSL-EJD, Order ...............................................................................15, 16

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) .................................................................................................11

*Fletcher v. Facebook, Inc.*,
   No. 2:24-CV-01384-BHH-MHC, 2025 WL 714238 (D.S.C. Feb. 13, 2025 ........................11

*Ford Motor Co. v. Montana Eighth Judicial District Ct.*,
   141 S. Ct. 1017 (2017) .........................................................................................................12

*Frank v. PNK (Lake Charles) LLC*,
   947 F.3d 331 (5th Cir. 2020) ..........................................................................................9, 10

*Garner v. Bumble, Inc.*,
   2023 WL 6065481 (N.D. Ill. Sept. 18, 2023) ..........................................................................11

*Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*,
   2021 WL 7708048 (E.D. La. May 21, 2021) .........................................................................19

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) .................................................................................................11

*In re Highground Holdings, LLC*,
   2022 WL 4593088 (M.D. La. Sept. 29, 2022) ...................................................................2, 19

*Hunter Killer Prods., Inc. v. Boylan*,
   2021 WL 2878558 (W.D. Tex. Jan. 28, 2021) ......................................................................25

*Jackson v. Tanfoglio Guiseppe, SRL*,
   615 F.3d 579 (5th Cir. 2010) ..........................................................................................9, 10

*Johnson v. TheHuffingtonPost.com*,
   21 F.4th 314 (5th Cir. 2021) ...................................................................................1, 11,12, 13

*Johnson v. The Town of Prosper*,
   No. 4:23-cv-650, Am. Mem. Op. and Order, ECF ...............................................................21

*K-Beech, Inc. v. Does 1-57*,
   2011 WL 5597303 (M.D. Fla. Nov. 1, 2011) ......................................................................22

*Lamont v. Postmaster General*,
   381 U.S. 301 (1965) ...........................................................................................................20

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ...........................................................................................................20

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ..............................................................................................10

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
   82 F. Supp. 3d 979 (N.D. Cal. 2015) .............................................................................22, 23

*Nat'l Union Fire Ins. Co. v. BLASIO*,
No. 2:06-cv-00071-B-A, Mem. Op., ECF ............................................................16

*NetChoice v. Carr*,
2025 WL 1768621 ..............................................................................................20

*NexLearn, LLC v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017)..........................................................................13

*Nike, Inc. v. Wu*,
349 F.Supp.3d 310 (2018) ....................................................................................8

*Nunes v. NBCUniversal Media, LLC*,
582 F. Supp. 3d 387 (E.D. Tex. 2022)................................................................11

*Pac v. Cirrus Design Corp.*,
93 F.4th 879 (5th Cir. 2024) ............................................................................8, 9

*Packingham v. North Carolina*,
582 U.S. 98 (2017).........................................................................................2, 20

*PaineWebber, Inc. v. Manhattan Private Bank (Switzerland)*,
260 F.3d 453 (5th Cir. 2001) ..............................................................................15

*Perkins v. Benguet Consolidated Mining Company*,
342 U.S. 437 (1952)............................................................................................10

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
688 F.3d 214 (5th Cir. 2012) ..............................................................................13

*PSINet, Inc. v. Chapman*,
362 F.3d 227 (4th Cir. 2004) ..............................................................................20

*Quick Techs., Inc. v. Sage Grp. PLC*,
313 F.3d 338 (5th Cir. 2002) ................................................................................9

*Reno v. ACLU*,
521 U.S. 844 (1997).......................................................................................2, 20

*Sams v. GA West Gate, LLC*,
316 F.R.D. 693 (N.D. Ga. Sept. 13, 2016)..........................................................19

*Sandifer v. Hoyt Archery, Inc.*,
2014 WL 3540812 (M.D. La. July 17, 2014) ......................................................18

*Sayers Constr., L.L.C. v. Timberline Constr., Inc.*,
976 F.3d 570 (5th Cir. 2020) ..............................................................................12

*Signature Management Team, LLC v. Doe*,
876 F.3d 831 (6th Cir. 2017) ...........................................................22

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,
941 F. Supp. 2d 1145 (N.D. Cal. Apr. 22, 2013) ...................................23

*Special Quality Alloys, Inc. v. Coastal Machine & Supply, Inc.*,
2023 WL 7412945 (S.D Tex. Nov. 9, 2023) .........................................15

*Stevo Design, Inc. v. SBR Marketing Ltd.*,
No. 3:14-mc-17-CAN, Order, ECF 6 (N.D. Ind. Aug. 5, 2014)...........................17

*Studio W. Prods., Inc v. Does 1-237*,
2013 WL 12158061 (S.D. Tex. Mar. 11, 2013)........................................2, 21

*In re Subpoena To Univ. of N. Carolina at Chapel Hill*,
367 F. Supp. 2d 945 (M.D.N.C. 2005) ..................................................14

*In re Tagami*,
2021 WL 5322711 (N.D. Cal. Nov. 16, 2021) .........................................22

*Talley v. California*,
362 U.S. 60 (1960)............................................................................20

*Torsh, Inc. v. Audio Enhancement, Inc.*,
661 F. Supp. 3d 596 (E.D. La. 2023).....................................................9

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*,
487 U.S. 72 (1988)...........................................................................14

*Estate of Ungar v. Palestinian Authority*,
400 F.Supp.2d 541 (2005) ...................................................................8

*Zoch v. Daimler, AG*,
2017 WL 2903264 (E.D. Tex. May 16, 2017).........................................10

**Statutes**

DMCA Section 512(h) ............................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 26................................................................................16

Fed. R. Civ. P. 27................................................................................14

Fed. R. Civ. P. 45................................................................... *passim*

U.S. Constitution First Amendment........................................... *passim*

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION OF NON-PARTY X CORPORATION ("X CORP.")
### TO QUASH PETITIONER'S SECTION 512(H) SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party X Corp., submits this Memorandum of Law in support of its Motion to Quash a subpoena issued by this Court under Section 512(h) of the Digital Millennium Copyright Act ("DMCA") and directed to X Corp. (the "Subpoena,") (ECF 15-2), and states as follows.

## I.     INTRODUCTION

Petitioner obtained a subpoena from this Court (the "Subpoena") under the DMCA in efforts to unmask an anonymous speaker who posted content on the X platform. Petitioner purportedly intends to sue that anonymous speaker for alleged copyright infringement. The anonymous speaker, however, has expressed concern that unmasking his or her identity will enable Petitioner to carry out his true intent of doxxing[1] the speaker and seeking "revenge," all while the content at-issue has long been removed from the X platform. ECF 25-1 (Perla Decl.), ¶ 7, Ex. A.

There are several issues that require the Court to grant this motion and quash the Subpoena.

*First*, the Court lacks personal jurisdiction over X Corp. X Corp. is incorporated in Nevada and headquartered in Bastrop, Texas. ECF 25-1 (Perla Decl.), ¶ 4. X Corp. is not a resident of Louisiana, and its only contact with the State of Louisiana is that the X platform is accessible to Louisiana residents, just as it is accessible to individuals in all 50 states and in most countries worldwide. These circumstances are insufficient to establish general or specific personal jurisdiction under well-established Fifth Circuit case law, and case law from federal courts nationwide. *See Johnson v. TheHuffingtonPost.com*, 21 F.4th 314, 323-24 (5th Cir. 2021) ("General jurisdiction for every state where HuffPost is visible would destroy its meaning for HuffPost's home states, to whom that awesome power is properly reserved"); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785 (5th Cir. 2021) (holding Louisiana court lacked personal

---

[1] Doxxing is the increasingly prevalent practice of publishing an internet speaker's personally identifiable information on the internet as a form of harassment.

jurisdiction over a website where Louisiana customers could create accounts, post reviews, and purchase items because no evidence the website purposefully targeted Louisiana residents.).

Regardless, it is Petitioner's burden to show that general or specific personal jurisdiction exists over X Corp. Nothing in the record makes any such showing, and Petitioner has failed to carry his burden. The Subpoena should be quashed for this reason alone.

*Second*, the Subpoena violates Federal Rule of Civil Procedure 45, and the Court should quash it. The Subpoena seeks compliance in New Orleans, Louisiana, more than 500 miles from Bastrop, Texas, where X Corp. is headquartered, violating the express strictures of Rule 45 that compliance cannot be compelled more than 100 miles away. *See In re Highground Holdings, LLC*, 2022 WL 4593088, at *3-4 (M.D. La. Sept. 29, 2022) (quashing subpoena; noting case law that "Rule 45 does not allow an exception for e-mail productions outside of agreement by the parties").

*Third*, even assuming *arguendo* that the Court has personal jurisdiction over X Corp. (it does not), nothing in the record satisfies First Amendment safeguards needed to unmask an anonymous speaker. The United States Supreme Court has long recognized the right to speak anonymously on the internet, including via social media platforms, is protected by the First Amendment to the U.S. Constitution. *Reno v. ACLU*, 521 U.S. 844, 868 (1997); *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 200 (1999); *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). This does not immunize anonymous speakers from liability for speech, but it does require that First Amendment safeguards be satisfied before the anonymous speaker can be unmasked, including to avoid a chilling effect that would see people not participate in the marketplace of ideas out of fear that they could be unmasked in order to be harassed for expressing unpopular opinions.

Those safeguards, as applied by courts in the Fifth Circuit, as well as federal courts throughout the country, are comprised of requiring a petitioner seeking to unmask the anonymous speaker to: (1) make a *prima facie* showing of his or her claim; and (2) demonstrate that the balance of interests favors the petitioner's need for the evidence over the anonymous speaker's interests in remaining anonymous. *See*, *e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175-76 (9th Cir. 2011) (collecting cases nationwide); *Studio W. Prods., Inc v. Does 1-237*, 2013 WL 12158061,

at *1 (S.D. Tex. Mar. 11, 2013) (enumerating the need for courts to "balance the need for disclosure against First Amendment interests" of the anonymous user).

None of Petitioner's filings make any such showing. Petitioner's filings merely attempt to cast away the First Amendment by arguing, without support, that such a showing is "unnecessary." That runs contrary to decisions from federal courts nationwide, and imperils significantly important core rights under the First Amendment by effectively claiming anonymous speech does not enjoy these rights. Similarly, none of Petitioner's filings make any showing that the balance of interests favors Petitioner, i.e., why Petitioner's need for the data to unmask the user outweighs the user's right to anonymity. This is particularly troubling given the anonymous speaker's concerns that his or her personal information, if produced to Petitioner before he or she could secure counsel, would be misused by Petitioner to harass the user and take some form of "revenge."

Notably, X Corp. has explained its concerns at length to Petitioner, and urged Petitioner to, at the very least, pursue his discovery in the proper court in Texas so as to limit the number of issues that need to be litigated. Petitioner initially agreed to do just that, but has since reneged on his agreement and gone on to assert a number of arguments in Court filings that fail to provide the Court with the full picture of what has actually transpired since Petitioner served the Subpoena.

For example, Petitioner's filings have failed to inform the Court that he expressly agreed after receiving X Corp.'s written objections to the Subpoena to pursue this matter in the appropriate court in Texas, where X Corp. is headquartered. Petitioner's filings have also failed to inform the Court that, until he filed a reply brief on August 1, 2025 (the "Reply," ECF 29) in support of his motion to compel (the "Motion to Compel," ECF 15), Petitioner *never* argued that X Corp. had waived its objection to personal jurisdiction. Rather, Petitioner engaged in extensive email discussions and more than one hour of phone calls with X Corp. since June 11, 2025, where he listened to X Corp. explain its objections to proceeding in this Court—and not once did Petitioner ever claim that those issues fell outside of X Corp.'s written objections to proceeding in this Court. Not once until August 1, 2025—in a Reply—did Petitioner attempt to ambush X Corp. with the argument that any objections to proceeding in this Court had been waived. Petitioner's reluctance

to raise that argument is likely because X Corp. raised the issue of this being the wrong Court to hear this matter in its written objections served on June 2, 2025, explained the personal jurisdiction aspect of that issue at length in a phone call on June 11, 2025, and raised that issue again in its first substantive filing with this Court on July 29, 2025.

Petitioner has insisted on forcing X Corp., as well as the Court, to unnecessarily expend resources on motion practice such as this, when this proceeding should not be in this district. For these reasons and others, as set forth more fully below, X Corp.'s motion should be granted and the Subpoena should be quashed.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Petitioner's DMCA Subpoena Seeks to Unmask an Anonymous Speaker

Petitioner's underlying dispute is with an anonymous speaker who is purportedly posting content on the X platform using the account name @BasedSolutions1. ECF 15-1. According to Petitioner's allegations, that anonymous user posted a video that Petitioner claims to hold intellectual property rights in. *Id.* Petitioner purportedly wants to pursue civil copyright claims against the anonymous speaker and sought the issuance of a subpoena from this Court under the DMCA to unmask that user, even though the allegedly infringing content has been removed from the X platform. *Id.*

This Court issued the Subpoena *ex parte* at Petitioner's request on May 16, 2025. *Id.* at 1. The Subpoena seeks information that could unmask the anonymous user to the extent it exists and is reasonably accessible, *i.e.*, "[f]ull legal name, Physical address, Email address(es), IP address(es) used to post the infringing content, Account creation date, Any other identifying information reasonably necessary to identify and contact the infringer." *Id.* Petitioner caused the Subpoena to be served on X Corp. on May 19, 2025, via X Corp.'s registered agent for service of process in Texas, where X Corp. is headquartered. ECF 14.

X Corp. merely provides the X platform that the anonymous speaker is using to post her or his own content, which is no longer accessible on the platform. X Corp. has no personal knowledge of the circumstances or nature of the dispute between Petitioner and the anonymous speaker, aside

from what Petitioner has represented in his filings to the Court. Indeed, X Corp. is *not* a party to the underlying dispute between Petitioner and the anonymous speaker. X Corp. was unaware of this proceeding at the time the Court issued the Subpoena, and X Corp. did not have any opportunity to be heard on these issues at that time.

Since receiving the Subpoena, X Corp. has notified the anonymous user who Petitioner is seeking to unmask. ECF 25-1 (Perla Decl.), ¶ 7, Ex. A). The user has responded to X Corp., asking X Corp. to not produce any information so that the user can attempt to engage legal counsel. *Id.* The user's responses to X Corp. also expressed concern that disclosure of her or his identity would enable Petitioner to engage in retaliatory conduct, including doxxing and "revenge," all while the content at-issue has long been removed from the X platform. *Id.*, ¶ 7, Ex. A.

### B. Petitioner Demanded Complete Capitulation on Less than 24 Hours Notice Before Filing a Motion to Compel

X Corp. timely served Petitioner with written objections to the Subpoena on June 2, 2025. Declaration of Arianna Swazer ("Swazer Decl."), ¶ 3; Declaration of J. Jonathan Hawk ("Hawk Decl."), ¶ 3, Ex. B. X Corp.'s objections noted, among other things, that this is not the proper Court for this proceeding, and that, because "X Corp. is headquartered in Bastrop, Texas, … this action is more properly brought there." *Id.* X Corp.'s cover email accompanying transmission of those written objections stated, "We are available to discuss." *Id.*

At the time that X Corp. responded to the Subpoena, it had no indication that Petitioner— who clearly knew that X Corp. was a Texas corporation—would seek to enforce the Subpoena at all once Petitioner considered X Corp.'s objections. Hawk Decl., ¶ 3.

X Corp. received no response from Petitioner until June 9, 2025, i.e., one week after X Corp. served its objections and offered to discuss the objections with counsel. Hawk Decl., ¶ 4, Ex. D; Swazer Decl., ¶ 4. On June 9, 2025, Petitioner emailed X Corp. at 12:36 pm Central Time, threatening to file a motion to compel the following day, on June 10, 2025, if X Corp. did not produce documents by the end of the day on June 9, 2025. *Id.* Among other things, Petitioner's June 9, 2025 email claimed that "courts have repeatedly rejected efforts to superimpose First

Amendment … arguments to avoid compliance." *Id.*

X Corp. responded to Petitioner's email that same day, stating that it is improper to threaten to file a motion to compel on less than 24 hours' notice and without first meeting and conferring in efforts to discuss and potentially resolve the issues. Hawk Decl., ¶ 5, Ex. C. X Corp. offered to meet and confer that Wednesday, June 11, 2025, explaining in a series of emails sent that day that X Corp.'s lead counsel was out of the office, traveling for client meetings, "in public places/transit where [he] could not … speak on the phone," and would not return to the office until June 11, 2025. *Id.* Petitioner refused. He responded, claiming that a quick motion to compel was proper because it was X Corp. that had delayed. Petitioner claimed that he "called [X Corp.'s counsel's] office last week," and he proceeded to demand that X Corp.'s lead counsel re-arrange his business commitments to immediately call Petitioner that evening, insisting that, otherwise, if X Corp. did not call or produce documents by the end of the day, he would file a motion to compel on June 10, 2025, even without meeting and conferring first. *Id.* at 7.

Petitioner later admitted—despite representing that he "called" X Corp.'s counsel the prior week—that he never spoke with anyone and never left a voice message. *Id.* at 10. X Corp.'s counsel had no idea that Petitioner attempted to call the preceding week, until Petitioner on June 9, 2025 said he did. *Id.*

Petitioner filed his Motion to Compel on June 10, 2025, and attempted to serve it improperly via email on X Corp.'s counsel that day. Hawk Decl., ¶ 12, Ex. C.

### C.    X Corp. Attempted to Meet And Confer to Resolve Issues

X Corp. and Petitioner had multiple phone calls after Petitioner filed his Motion to Compel. First, the Parties spoke on June 11, 2025, after X Corp.'s lead counsel returned to the office from his business trip. Hawk Decl., ¶ 15. During that call, X Corp. explained, among other things, that:

- Petitioner's attempted service of the Motion via email was improper;
- it appeared that Petitioner intended to enforce his subpoena in this Court, but this Court lacks personal jurisdiction over X Corp. Any motion, if necessary, needed to be brought in the appropriate Texas court; and

- the Subpoena failed to satisfy the First Amendment safeguards required to unmask an anonymous speaker.

Hawk Decl., ¶¶ 15-18; Swazer Decl., ¶ 5.

During that June 11, 2025 call, Petitioner never claimed that X Corp. had waived its objection to personal jurisdiction. Hawk Decl., ¶ 17; Swazer Decl., ¶ 5. To the contrary, he seemed to understand that X Corp.'s written objections regarding Petitioner's need to pursue his efforts in Texas included an objection to this Court's attempts to exercise personal jurisdiction over X Corp. *Id.* At most, Petitioner noted that he disagreed with X Corp.'s personal jurisdiction objection because the Court issued the Subpoena in the first instance, albeit on an *ex parte* basis. *Id.*

***Petitioner nonetheless agreed during the meet and confer call on June 9, 2025 to pursue his efforts in Texas to unmask the user.*** *Id.* at 18. Specifically, Petitioner expressly agreed with X Corp. to take the Motion to Compel hearing off calendar to provide him with time to pursue this proceeding in Texas. He explained to X Corp. that he did not want to close the proceeding entirely in case something happened in the contemplated Texas matter that required him to return to this Court. Hawk Decl., ¶ 18; Swazer Decl., ¶ 5.

X Corp. and Petitioner spoke again on June 13, 2025. Hawk Decl., ¶ 19; Swazer Decl., ¶ 5. X Corp. explained the anonymous user had: responded to notice from X Corp. about the Subpoena; expressed concern that being unmasked was an effort by Petitioner to harass the user; and, stated she or he was seeking legal counsel. *Id.* Petitioner, in turn, acknowledged the user's response, and reiterated his agreement to pursue his efforts to unmask the user in Texas. *Id.*

Petitioner, however, reneged on his agreement. X Corp. followed up with Petitioner on June 17, 2025 because the Court's docket showed that the Motion was still set for a hearing. Hawk Decl., ¶ 21; Swazer Decl., ¶ 4. Petitioner responded that he was not taking the Motion off calendar, but was instead continuing the hearing date. *Id.* Days later, Petitioner changed course again—this time reneging on his agreement to pursue his efforts in Texas, and insisting on pursuing his Motion to Compel in this Court. *Id.* In attempting to justify his change of course, Petitioner claimed in an email that he only "agreed to consider" pursuing this matter in Texas. But there was no such caveat

discussed on the phone on June 11 or 13, 2025. *Id.*; Hawk Decl., ¶¶ 18-19. There was a clear expression of agreement by Petitioner on this matter that, if needed, he would seek to enforce the Subpoena in Texas, where X Corp. is headquartered. *Id.*

X Corp. and Petitioner exchanged a number of emails on and after June 19, 2025 in efforts to resolve this matter, but were unable to reach any agreement, with Petitioner even refusing to participate in any additional phone calls in efforts to talk through the issues. *Id.*

## III.    **ARGUMENT**

### A.    **This Court Should Quash the Subpoena Because this Court Lacks Personal Jurisdiction Over X Corp.**

Under Rule 45(d)(3), a non-party to whom a subpoena is directed may file a motion to quash or modify the subpoena in the district where compliance is required. The motion to quash must include the basis for the objection, such as jurisdictional defects, undue burden, or privilege. *See*, *e.g.*, *Estate of Ungar v. Palestinian Authority*, 400 F.Supp.2d 541 (2005) (non-party successfully moved to quash subpoenas based on a lack of personal jurisdiction). This procedural right is well-established and allows non-parties to protect themselves from improper or overly burdensome subpoenas. Fed. R. Civ. P. 45; *see also Nike, Inc. v. Wu*, 349 F.Supp.3d 310 (2018) ("It is axiomatic that, before compelling a nonparty to comply with a subpoena, a court must have personal jurisdiction over that nonparty.").

Here, this motion to quash is proper to address X Corp.'s arguments.

### 1.    **Personal Jurisdiction, Generally**

"For a court to issue a binding judgment against a defendant, it must have both subject matter and personal jurisdiction over the defendant." *Pac v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024) (citing *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231-32 (5th Cir. 2012)). A district court has personal jurisdiction over a nonresident if the forum's long-arm statute creates personal jurisdiction over that nonresident and the exercise of personal jurisdiction comports with federal due process. *Id.* (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

As to Louisiana, the limits of its "long-arm statute are coextensive with constitutional due process limits." *Jackson v. Tanfoglio Guiseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (analyzing Louisiana's long-arm statute in the context of challenge to personal jurisdiction). The personal jurisdiction inquiry thus becomes "whether jurisdiction comports with federal constitutional guarantees," *i.e.*, with the Due Process Clause of the Fourteenth Amendment. *Id.*

The Due Process Clause of the Fourteenth Amendment, in turn, "guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has certain 'minimum contacts' with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Torsh, Inc. v. Audio Enhancement, Inc.*, 661 F. Supp. 3d 596, 600 (E.D. La. 2023) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient minimum contacts will give rise to either specific, 'case-linked' jurisdiction or general, 'all-purpose' jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Each is discussed in turn below.

When jurisdiction is challenged, it is well established that "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant,'" be it personal or general. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002).

Here, Petitioner cannot carry his burden. Petitioner cannot make a showing that X Corp. is at home in or has sufficient minimum contacts with Louisiana that could support a finding of personal jurisdiction over X Corp. Consequently, the Subpoena should be quashed.

## 2. X Corp. is *Not* Subject to General Jurisdiction in Louisiana

For "general jurisdiction to be present, due process requires that a defendant have 'sufficiently systematic and continuous' contacts with the forum state, such that the defendant feels 'at home' in the forum state.'" *Pace*, 93 F.4th at 898 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). For a corporation, it is "at home where its place of incorporation and its principal place of business are located." *Id.* "These two places 'have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 337 (5th Cir. 2020) (quoting *Daimler AG*, 571 U.S. at 137); *see also*

*Zoch v. Daimler, AG*, 2017 WL 2903264, at *3 (E.D. Tex. May 16, 2017), *report and recommendation adopted*, 2017 WL 9935519 (E.D. Tex. July 5, 2017) (general jurisdiction requires that the "corporation itself—not its managing agent or subsidiary or affiliate, must be 'at home' in the forum state.").

Importantly, while a corporation might operate in many places, "it cannot be deemed at home in all of them' because unpredictability would follow and jurisdictional rules are meant to 'promote greater predictability.'" *Id.*; *see also Daimler AG*, 571 U.S. at 139 n.20 (the notion that a corporation would be considered "at home" in "every state in which it engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping."). Rather, a corporation that is not a resident in a forum can be subject to general jurisdiction in that forum *only when* its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 138-39). That, however, is an "exceptional case," and it is "incredibly difficult to establish." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). The "textbook" example of an "exceptional case" occurred when a mining corporation located in the Philippine Islands moved its operation to Ohio during World War II. *See Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 448 (1952). General jurisdiction was proper in Ohio because it became the center of the corporation's activities: the company conducted business there, kept files there, and made key business decisions there. *Id.*

In sharp contrast to that exceedingly rare scenario where the company *de facto* relocated to Ohio, mere business operations that touch a forum have been universally recognized as being insufficient to establish general jurisdiction over a nonresident corporation. For example, it has been recognized by courts that a nonresident's advertising and marketing efforts conducted through social media and visible by individuals in the forum were insufficient to confer general jurisdiction over that nonresident. *Frank*, 947 F.3d at 339 (citing *Jackson*, 615 F.3d at 584). A nonresident defendant's isolated visits to the forum are likewise insufficient. *Id.*

This holds true in the context of corporations that provide platforms such as X Corp. Case

law from the Fifth Circuit—consistent with case law from federal courts nationwide—establishes that website providers are *not* subject to general jurisdiction in every state where the website is visible. *See TheHuffingtonPost.com*, 21 F.4th at 323-24; *Admar Int'l, Inc.*, 18 F.4th at 787.[2]

Here, X Corp. is incorporated in Nevada and has its principal place of business in Bastrop, Texas. ECF 25-1 (Perla Decl.), ¶ 4. It maintains no offices in Louisiana, it does not have any employees in this State, and the records that Petitioner seeks are not accessible from within this State. *Id.* at ¶ 6. X Corp. merely provides the X platform, which is accessible to users in this State—just as it is accessible to users in all 50 states and in most countries worldwide. *Id.* at ¶ 3. These circumstances are a far cry from establishing general jurisdiction over X Corp. *See, e.g.*, *TheHuffingtonPost.com*, 21 F.4th at 323-24; *see also BNSF Ry. Co. v. Tyrrell,* 137 S. Ct. 1549, 1559 (2017) (a railroad company with over 2,000 miles of railroad track and more than 2,000 employees in Montana is not "at home" there when it operates in 28 states and is not "heavily engaged in activity in Montana.").

X Corp. is not subject to general jurisdiction in Louisiana.

### 3.    X Corp. is *Not* Subject to Specific Jurisdiction in Louisiana

To find specific jurisdiction, three conditions must be met. "*First*, the defendant must 'purposefully avail itself of the privilege of conducting activities in the forum State.' The defendant's ties to the forum, in other words, must be ties that 'the defendant [itself]' purposefully

---

[2] *See also Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 399 (E.D. Tex. 2022) (holding that NBC Universal did not purposefully avail itself of Texas when it sold cable television programs to subscribers and consumers in Texas and ran a website that was accessible to, but did not specifically target, Texas users); *Cap. Credit Inc. v. Mainspring Am., Inc.*, 2020 WL 4043499, at *3 (W.D. Tex. July 17, 2020) (Amazon.com Services, Inc. is not subject to general jurisdiction in Texas even though it does business in the state); *accord Hepp v. Facebook*, 14 F.4th 204, 207-08 (3d Cir. 2021) (district court lacked general jurisdiction over nonresident platform providers Reddit and Imgur, even though, among other things, Imgur purportedly maintained an online store selling merchandise to Pennsylvanians); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) (holding that a South Carolina court lacked personal jurisdiction over an interactive website because it did not target South Carolina residents in particular); *Garner v. Bumble, Inc.*, 2023 WL 6065481, at *6 (N.D. Ill. Sept. 18, 2023) (Illinois lacked general jurisdiction over a nonresident company operating a dating platform that the plaintiff accessed from within the forum state); *Fletcher v. Facebook, Inc.*, 2025 WL 714238, at *4 (D.S.C. Feb. 13, 2025), *report and recommendation adopted*, No2025 WL 713777 (D.S.C. Mar. 5, 2025); *Angelillo v. Facebook*, 2024 WL 4529564, at *6 (M.D. Pa. Oct. 18, 2024), *aff'd*, 2025 WL 1189822 (3d Cir. Apr. 24, 2025) (in finding no general jurisdiction, recognizing that "the operation of an interactive website, without more is not so substantial that it may be comparable to being at "home" in a state where it is neither located nor incorporated").

forged. *Second,* the plaintiff's claim 'must arise out of or relate to' those purposeful contacts. A defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain our power to hear it. *Third,* exercising our jurisdiction must be 'fair and reasonable' to the defendant." *TheHuffingtonPost.com*, 21 F.4th at 317-18.

These limits "'derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism.' Put another way, a defendant must have 'fair warning' that his activities may subject him to another state's jurisdiction. That warning permits the defendant to 'structure its primary conduct to lessen or avoid exposure to a given State's courts.'" *Id.*

The existence of the internet notwithstanding, specific jurisdiction still requires purposeful availment—something more than "random, fortuitous, or attenuated contacts." *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475). In other words, "[t]he contacts must be the defendant's own choice." *Ford Motor Co. v. Montana Eighth Judicial District Ct.*, 141 S. Ct. 1017, 1025 (2017). "They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Even under this framework for specific jurisdiction, it is improper, including under Fifth Circuit case law, to find specific jurisdiction over a nonresident corporation merely because it provides an interactive website that is accessible from within this State. *Admar Int'l, Inc.*, 18 F.4th at 786-87. That is consistent with decisions from Courts of Appeals throughout the country. *Id.* (citing with approval *be2LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."), *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state"), and *GTE News Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C.

Cir. 2000) (rejecting contention that "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with the forum")); *see also NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1379 (Fed. Cir. 2017) ("What is sufficient may vary from case to case, but it cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is 'suit-related conduct . . . creat[ing] a substantial connection with the forum State.'"); *Pervasive Software*, 688 F.3d at 228 ("only contact with Texas is a commercial, interactive website which is accessible globally but available only in the German language. This only coincidentally, and not purposely or deliberately, includes contact with a relatively few German taxpayers who happen to access it from Texas.").

Were the rule otherwise, defendants in internet-related cases would be subject to personal jurisdiction in "every spot on the planet where that interactive website is accessible"—an unjust and absurd result, which courts have roundly rejected. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014).

Here, X Corp. is *not* a party to the underlying copyright infringement action that Petitioner is pursuing (ECF 15-1 at 7), and, thus, the cause of action cannot arise out of X Corp.'s contacts with Louisiana. X Corp. has not engaged in any specific conduct in Louisiana whatsoever. Moreover, X Corp. does not have any employees in this state nor does X Corp. make any decisions about the operations of the X platform in this State.

The Fifth Circuit and other federal courts nationwide have rejected time and again, i.e., the notion that a nonresident corporation can be subject to specific jurisdiction in Louisiana merely because it operates a globally available platform that happens to be accessible to individuals within this forum. That theory is simply wrong. *TheHuffingtonPost.com*, 21 F.4th at 317-18.

X Corp. did *not* "purposefully direct" any activities relevant to Petitioner's underlying copyright infringement action to Louisiana residents. *See Clemens v. McNamee,* 615 F.3d 374, 376 (5th Cir. 2010); (adopting "purposefully directed" standard from *Burger King Corp.*). There is thus no basis for the Court to find specific jurisdiction over X Corp.

Without general or specific jurisdiction, the Subpoena must be quashed.

####    4.        Louisiana is *Not* the Proper Venue

Section 512(h) DMCA does not provide for nationwide venue and jurisdiction. *In re Subpoena To Univ. of N. Carolina at Chapel Hill*, 367 F. Supp. 2d 945, 957 (M.D.N.C. 2005) ("*Chapel Hill*") (quashing DMCA subpoena served on N.C. State). Indeed, "[a]llowing private parties to use the power of federal courts to gather private information *ex parte* in absence of litigation or contemplated litigation (*contrast* Fed. R. Civ. P. 27) is an extraordinary event in itself without construing Section 512(h) as being a nationwide venue and jurisdiction statute." *Id*.; *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc*., 487 U.S. 72, 76 (1988) ("the subpoena power of a court cannot be more extensive than its jurisdiction").

*Chapel Hill* is illustrative. In that case, the court sitting in the Middle District of North Carolina considered, among other issues, whether a subpoena from that district could be properly issued to N.C. State, located in the Eastern District of North Carolina. 367 F. Supp. 2d at 956. The subpoena sought data from Jane Doe, who moved to quash on the basis that both service and venue were improper. *Id.* The *Chapel Hill* court agreed, finding the DMCA does *not* authorize every district court to exercise jurisdiction by compelling action from persons outside the district in which they sit. *Id.* at 957. The *Chapel Hill* court made clear that it would *not* infer a grant of jurisdiction for any district court to compel action from nonresidents without explicit authorization from Congress. *Id.* As such, the court quashed the subpoena for lack of jurisdiction and improper venue, where N.C. State was located in another district. The same should hold true in this case.

Here, X Corp. is a Nevada corporation that is headquartered in Bastrop, Texas. X Corp. is clearly and indisputably located outside of this district, and to find otherwise would be to broaden this Court's subpoena power beyond its jurisdiction.

Moreover, this Court correctly acknowledged in a prior Order—before X Corp. was served with any papers in this case (ECF 10-5)—that some courts have found DMCA subpoenas are improperly issued where the Court lacks personal jurisdiction over the subpoenaed party. *See In re: DMCA Section 512(h) Subpoena to Facebook, Inc*., 2015 WL 12805630, at *7 (S.D. Tex. Nov. 18, 2015) ("In sum, the rule requires Requestor to go to a court in the district in which Facebook

'resides' to obtain a § 512(h) subpoena."); *Chapel Hill*, 367 F. Supp. 2d at 957 ("In the instant case, Section 512(h) says that the copyright owner or agent can seek a subpoena from any district court, but does not say that every district court has jurisdiction to issue a subpoena compelling action from persons outside of the district.").

That is the precise circumstance here. X Corp.'s counsel repeatedly urged Petitioner to pursue a DMCA subpoena from an appropriate Nevada or Texas court rather than seeking a subpoena from this Court. But Petitioner has chosen to disregard that.

### 5.    X Corp. Has *Not* Waived Its Objections to Personal Jurisdiction

The Fifth circuit recognizes the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections." *PaineWebber, Inc. v. Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 459 (5th Cir. 2001). This rule has been applied to recognize, for example, a party does *not* waive a jurisdictional defense by merely filing a counterclaim, cross-claim, or third party claim. *Bayou Steel Corp. v. M/V Amstelvoom*, 809 F. 2d 1147, 1149 (5th Cir. 1987). That conduct, without more, is insufficient to evidence any waiver. *Id.*

Waiver of an objection to personal jurisdiction by conduct must be "characterized as 'extensive participation' in the merits of the litigation for a lengthy period of time as necessary to establish a waiver by conduct." *Fernandez v. Eng. & Insp. Srvcs., LLC*, No. 2:23-cv-00057-BSL-EJD, Order and Reasons, ECF 39 at 6 (E.D. La. Sept. 6, 2023) (Hon. Currault, D.); *Angers v. Franco*, No. 2:24-cv-00688-BSL-DPC, Dkt. 39, Order and Reasons, at 3 ("[a]lthough the Fifth Circuit has recognized the doctrine of waiver by conduct, extensive participation is required: …") (Hon. Currault, D.).

Such extensive participation has been found under circumstances that are far afield from those here, where a party actively litigates a case without making known its objection to personal jurisdiction until months or even years later. *See*, *e.g.*, *In re Correra*, 589 B.R. 76, 122-23 (Bankr. N.D. Tex. 2018) (party waived objection to personal jurisdiction where it had "over 20 months of active involvement in this court's proceedings," including appearing, retaining counsel, and never before noting an objection to personal jurisdiction); *see also Special Quality Alloys, Inc. v. Coastal*

*Machine & Supply, Inc.*, 2023 WL 7412945, at *3 (S.D Tex. Nov. 9, 2023) (rejecting argument that defendant waived objection to personal jurisdiction where defendant "ask[ed] for a 60-day stay of the initial scheduling conference in federal court, fil[ed] a third-party complaint against J.P. Morgan Chase, and serv[ed] Rule 26 disclosures;" "[t]hese actions, taken individually or together, do not come close to the level necessary to constitute a voluntary submission to the jurisdiction of this court"); *Nat'l Union Fire Ins. Co. v. BLASIO*, No. 2:06-cv-00071-B-A, Mem. Op., ECF 161 at 5 (N.D. Miss. May 27, 2008) (waiver where "defendants waited almost a year and a half after the present case was filed and thirteen and a half months after their counsel filed an appearance before filing a motion to dismiss. They actively participated in discovery, motions and the litigation process in general in this court during that time frame.").

In sharp contrast to those circumstances, courts have found minimal participation in a litigation proceeding before asserting an objection to personal jurisdiction, or participation after asserting such an objection, does *not* constitute waiver. *See Fernandez*, No. 2:23-cv-00057-BSL-EJD, Order and Reasons, ECF 39 at 6; *Angers*, No. 2:24-cv-00688-BSL-DPC, Order and Reasons, Dkt. 39 at 3; *see also Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 380 (5th Cir. 2004) (defendant continued to object to jurisdiction at preliminary conference and in discovery, such that failing to then pursue jurisdiction argument for months was not waiver).

Here, X Corp. has consistently made clear that it believes this proceeding should be in Texas where X Corp. is headquartered, and not in this Court. X Corp. noted in its written objections that this is not the proper Court. Hawk Decl., Ex. B. X Corp. then, since its first conversation with Petitioner, has reiterated—in no uncertain terms—that it believes this Court lacks jurisdiction over X Corp., including to hear a motion to compel. Hawk Decl., ¶ 15; Swazer Decl., ¶ 5. Petitioner seemingly understood during his meet and confer phone calls that X Corp.'s written objections covered its objection to personal jurisdiction, and he *never* claimed a waiver of that objection until he filed his Reply on August 1, 2025. Hawk Decl., ¶ 17; Swazer Decl., ¶ 5. Petitioner even expressly agreed on June 11 and 13, 2025 to pursue this matter in the appropriate Texas court, before reneging on that agreement and bringing his hastily-filed Motion to Compel that he pursued

without first meeting and conferring with X Corp. *Id.*; *see Dean v. Akal Security, Inc.*, No. 1:18-mc-00033, Minutes and Mem. Order, ECF 30 at 9 (W.D. La. Apr. 8, 2019) (recognizing that Rule 45(d)(1)'s requirement to take reasonable steps to avoid imposing undue burden or expense on a third party includes a meet and confer requirement before filing a motion to compel a third party to respond to a subpoena).

Petitioner's argument in his Reply[3] regarding wavier is that X Corp.'s written objections used the term "forum" in stating that "that this is the improper forum to bring this action. X Corp. is headquartered in Bastrop, Texas, and thus, this action is more properly brought there." ECF 29 at 7 n.20. That, however, is an unduly narrow construction of that term in the context of this third-party Subpoena, and it is a construction that would result in an overly harsh and undue consequence, particularly where X Corp. has indisputably reiterated its objection to personal jurisdiction since its first engaged with Petitioner, and where case law on personal jurisdiction repeatedly uses the word "forum" in its analysis of assessing general and specific contacts.

Petitioner's argument would also call for a particularly harsh and improper result where, at the time X Corp. responded to the Subpoena, it was not clear that: (i) a motion to compel would be necessary following meet and confer efforts; or (ii) that Petitioner would insist on bringing such a motion in this Court, where it is not uncommon for in the context of third party subpoenas for a party to issue a subpoena under Rule 45—including pursuant to the DMCA—from one district court, and then have it served and attempt to enforce it where the corporate non-party recipient is incorporated. *See generally Stevo Design, Inc. v. SBR Marketing Ltd.*, No. 3:14-mc-17-CAN, Order, ECF 6 at 2 (N.D. Ind. Aug. 5, 2014) (recognizing that "Stevo's subpoena was issued by the District of Nevada, the court where the pertinent action is pending, in compliance with Fed. R. Civ. P. 45(a)(2). Because Feustel, as a nonparty to the underlying Nevada action, resides in the Northern District of Indiana, and because the subpoena commands Feustel to attend a deposition

---

[3] It is also notable that Petitioner's Motion and Reply never mentioned that X Corp. repeatedly mentioned during their phone calls that it contests this Court's attempts to exercise personal jurisdiction over it, nor did Petitioner's filings mention that Petitioner never claimed that X Corp. waived that argument until his Reply.

and produce documents in this district, Feustel properly filed this motion to quash in this Court."). Indeed, if Petitioner had followed X Corp.'s suggestions raised during their meet and confer to pursue this matter in Texas—as he initially agreed to do—there would likely be no need to litigate the issue of personal jurisdiction.

Put simply, Petitioner's argument regarding purported waiver is misguided. X Corp. has maintained a consistent position regarding personal jurisdiction in this proceeding, and Petitioner has consistently understood that was X Corp.'s position, including because Petitioner never raised any argument regarding alleged waiver until his Reply. Indeed, X Corp.'s written objections included noting that this proceeding is not properly before this Court, and to the extent there was any confusion (there was not) it was clarified during a lengthy phone call with Petitioner on June 11, 2025, and by X Corp.'s first substantive filing with this Court, which reiterated X Corp.'s objection to personal jurisdiction. *See also Doe 1 v. Baylor Univ.*, 2019 WL 2462799, at *1 (W.D. Tex. Mar. 28, 2019) (explaining that a subpoenaed non-party who disputes the court's personal jurisdiction may raise that objection not only in written objections under Rule 45, but also in a motion to quash or in opposition to a subsequent motion to compel). Petitioner should not be able to now misconstrue X Corp.'s conduct as some form of "waiver" based on his 11th hour misinterpretation of X Corp.'s written objections, which he failed to raise until his Reply brief.

**B.    The Court Should Quash the Subpoena Because It Impermissibly Seeks Compliance More Than 100 Miles from X Corp.'s Offices in Texas and Place of Incorporation in Nevada**

The Subpoena also violates Rule 45(c)(2)(A), which provides a subpoena may require the production of documents only "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The Subpoena purports to command X Corp. to produce documents in New Orleans, Louisiana, nearly 500 miles away from X Corp.'s headquarters in Bastrop, Texas. X Corp.'s offices are in Texas, and it has no office or presence transacting business in person within 100 miles of New Orleans. See ECF 25-1 (Perla Decl.), ¶ 6.

The Court should quash the Subpoena on this basis alone, because "[a] subpoena requiring a nonparty to produce documents at a place more than 100 miles away is invalid." *Sandifer v. Hoyt*

*Archery, Inc.*, 2014 WL 3540812, at \*4 (M.D. La. July 17, 2014) (citing Fed. R. Civ. P. 45(d)(3)(A)(ii)), *see also Great Lakes Ins., S.E. v. Gray Grp. Invs.*, *LLC*, 2021 WL 7708048, at \*11 (E.D. La. May 21, 2021) (quashing subpoena for production of documents because, among other reasons, subpoena "required production at a location more than 100 miles from the non-party's location"); *In re Highground Holdings*, *LLC*, 2022 WL 4593088 (M.D. La. Sept. 29, 2022) (granting motion to quash subpoena based on violation of 100-mile rule); *Benchmark Ins. Co. v. Johnson Bros. Constr.*, *LLC*, 2015 WL 12712072 (W.D. Tex. May 26, 2015) (denying motion to compel compliance with out-of-district subpoena in part on violation of 100-mile rule).

Accordingly, the Subpoena disregards Rule 45's geographic limitation and should be recognized as invalid.[4]

### C. The Court Has Not Determined Whether Any First Amendment Safeguards for Unmasking the Anonymous User Are Applicable Here

Even assuming *arguendo* that this matter is properly before this Court (it is not), the Subpoena should be quashed because Petitioner has failed to satisfy well-established First Amendment safeguards needed to unmask an anonymous speaker on an online platform.

### 1. The First Amendment Protects the Ability to Speak Anonymously on the Internet

The development of the internet and connected devices and services over the past several decades, and in particular the advent and proliferation of social media platforms, has not changed core First Amendment rights enjoyed by adults and minors alike. *Brown v. Entm't Merch. Ass'n,* 564 U.S. 786, 790 (2011) ("'[T]he basic principles of freedom of speech . . . do not vary' with a new and different communication medium."). It has long been recognized by the United States Supreme Court, including before the advent of the internet, that "[a] fundamental principle of the

---

[4] While X Corp. acknowledges this Court's citation to *Sams v. GA West Gate, LLC*, 316 F.R.D. 693, 696-97 (N.D. Ga. Sept. 13, 2016) for the proposition that "the court may modify the subpoena . . . to allow service of responsive documents by email"), X Corp. would like to respectfully point out that there are some courts, including Louisiana federal district courts, that suggest that an electronic production to get around the 100-mile limitation **must** be consensual. *See, e.g.*, *In re Highground Holdings, LLC*, 2022 WL 4593088, at \*3-4 (quashing subpoena; noting case law that "Rule 45 does not allow an exception for e-mail productions outside of agreement by the parties;" and noting that Fifth Circuit jurisprudence recognizes that where a plaintiff's subpoena to a non-party does not agree to send the requested discovery by email, the subpoena may be properly quashed.). X Corp. does not consent to this.

First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham*, 582 U.S. at 104.

With the advancement of technologies, places to engage in protected First Amendment activities have been recognized to include far more than the analog realm where "a street or a park is a quintessential forum for the exercise of First Amendment rights." *Packingham*, 582 U.S. at 104. Places where individuals can exercise their First Amendment rights have been recognized as encompassing "cyberspace—the 'vast democratic forums of the internet' in general, *Reno*, 521 U.S. 868, and social media in particular." *Packingham*, 582 U.S. at 1. Social media platforms have billions of users, offer a "relatively unlimited, low-cost capacity for communication of all kinds," *Id.* at 98 (citing *Reno*, 521 U.S. at 870), and "users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.'" *Id.* at 105 (citing *Reno*, 521 U.S. at 870).

In *Reno*, the Court noted that "[t]hese websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.'" *Packingham*, 582 U.S. at 107 (quoting *Reno*, 521 U.S. at 870).

The Court has further recognized that the First Amendment protects not only anonymous speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Talley v. California*, 362 U.S. 60, 64–65 (1960), and the right to anonymously receive information, *Lamont v. Postmaster General*, 381 U.S. 301 (1965), but also the right to speak anonymously on the internet, including on social media platforms. *Buckley*, 525 U.S. at 200 (1999); *Reno*, 521 U.S. at 870 (finding there is "no basis for qualifying the level of First Amendment scrutiny that should be applied" to online speech); *Brown*, 564 U.S. at 790; *ACLU v. Gonzales*, 478 F. Supp. 2d 775, 806 (E.D. Pa. 2007) (finding lack of anonymity will chill users' ability to engage with "sensitive, personal, controversial, or stigmatized content"); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 236 (4th Cir. 2004) (finding without anonymity, "the stigma associated with the content of [certain] sites may deter adults from visiting them"); *see also NetChoice v. Carr*, 2025 WL 1768621, at *15 (N.D.

Ga. June 26, 2025) (recognizing well-established First Amendment right to speak anonymously on social media platforms); *see generally Johnson v. The Town of Prosper*, No. 4:23-cv-650, Am. Mem. Op. and Order, ECF 35 at 36 (E.D. Tex. July 1, 2025) ("anonymous speech is protected by the First Amendment").

This does not mean that an anonymous speaker's statements are immune from liability. But it does mean that, to unmask the anonymous user in the first instance—and to do so in a manner that does not risk chilling speech—First Amendment safeguards must first be satisfied before the speaker can be unmasked. *See*, *e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175-76 (9th Cir. 2011) (collecting cases nationwide); *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (determining whether procedural safeguards for protected speech were satisfied before ordering the unmasking of an anonymous speaker); *Cor Clearing, LLC v. Investorshub.com, Inc*., 2016 WL 3774127, at *3 (N.D. Fla. May 11, 2016) ("In the context of unmasking an anonymous speaker, a court must conduct a preliminary screening to ensure that there is a viable claim that justifies overriding an asserted right to anonymity.") (internal citations and quotation marks omitted).

It follows that a request to unmask an anonymous online user based on anonymously posted content—which is precisely what Petitioner seeks here (ECF 15-1)—First Amendment scrutiny must be satisfied. Indeed, courts in the Fifth Circuit have clearly enumerated the need for First Amendment considerations when seeking to subpoena identifying information for anonymous internet users. *See e.g. Dougherty v. U.S. Dep't of Homeland Sec.*, 2022 WL 20717365, at *1 (S.D. Tex. Jan. 19, 2022) (noting "that substantive First Amendment issues may exist as to the subpoena directed at Twitter (now X Corp.) to obtain the identity of an anonymous Twitter account user"); *Studio W. Prods., Inc.*, 2013 WL 12158061, at *1 (enumerating the need for courts to "balance the need for disclosure against First Amendment interests" of the anonymous user).

Other courts have likewise held that before a service provider such as X Corp. can be compelled to produce information that could unmask the identity of an anonymous speaker, the plaintiff must *first* make a "concrete" prima facie showing of his asserted cause of action. *See*

*Arista Recs., LLC*, 604 F.3d at 118; *K-Beech, Inc. v. Does 1-57*, 2011 WL 5597303, at *2–4 (M.D. Fla. Nov. 1, 2011), *report and recommendation adopted*, 2011 WL 5597293, at *1 (M.D. Fla. Nov. 17, 2011) (considering, in the context of a Rule 45 subpoena to discover a Doe defendant's identity, whether plaintiff made a "concrete showing of a prima facie claim of copyright infringement"); *Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088, 1092 (W.D.Wash. 2001).

And once that showing is made, a court must still balance the need for discovering the identifying information with the First Amendment interest of remaining anonymous. *See Dendrite Int'l, Inc.*, 775 A.2d at 760–61 ("[A]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (although plaintiffs presented a "real evidentiary" basis for their claim as to the anonymous account holder, the "First Amendment rights outweigh[ed] [their] need for the requested information").

Though there is no definitive standard adopted by the Fifth Circuit for determining if or when the right to discovery should trump First Amendment considerations, many courts in other Circuits have acknowledged that the First Amendment safeguards *must* be analyzed even after a court issues a subpoena under the DMCA to unmask anonymous users accused of alleged copyright infringement. *See*, *e.g.*, *Music Grp. Macao Com. Offshore Ltd.*, 82 F. Supp. 3d at 983 ("a party seeking to discover the identity of an anonymous speaker must first 'persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff . . . .'"); *In re Tagami*, 2021 WL 5322711, at * 4 n.2 (N.D. Cal. Nov. 16, 2021) (in the context of seeking to unmask an anonymous speaker on the internet under 28 U.S.C. § 1782, the analysis "also considers the First Amendment . . . ."); *In re DMCA Section 512(h) Subpoena to YouTube* (*Google*, *Inc.*), 581 F. Supp. 3d 509 (S.D.N.Y. 2022) (noting qualified privilege protecting anonymity and granting motion to quash filed by anonymous Doe); *Signature Management Team, LLC v. Doe*, 876 F.3d 831 (6th Cir. 2017)

(recognizing First Amendment right to anonymous speech on the Internet).

> **2.    The First Amendment Protections Apply With Equal Force in the Context of DMCA Subpoenas**

While Petitioner argued during the meet and confer process that the issuance of a DMCA subpoena enables a party to bypass the First Amendment safeguards above, that is incorrect, as recognized by several district courts. *See*, *e.g.*, *In re DMCA § 512(H) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876-79 (N.D. Cal. June, 21, 2022) ("*Bayside*") (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)); *Baugher v. GoDaddy.com LLC*, 2021 WL 4942658, at *2-3 (D. Ariz. Oct. 22, 2021).

This issue was squarely addressed in *Baugher*, and was decided in line with X Corp.'s position here and *Bayside*. The *Baugher* court held that the party seeking to unmask an anonymous user via a DMCA subpoena must still demonstrate a prima facie claim. *Baugher*, 2021 WL 4942658, at *2-3. Finding otherwise, based merely "on [an] attestation of a good faith belief of the Does' copyright infringement would render the Does' ability to quash the subpoena on constitutional grounds, as provided for in § 512(h)(6) and Rule 45, a nullity." *Id.*, at *3 (citing *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1157-58 (N.D. Cal. Apr. 22, 2013)).

Indeed, finding otherwise would create an unjustifiable anomaly. It would enable a party serving a DMCA subpoena to skip the two-step inquiry and circumvent the associated First Amendment safeguards—while a party that has sued doe defendants for alleged copyright infringement and issued a civil subpoena to a third party under Fed. R. Civ. P. 45 would still need to satisfy that two-step inquiry. *See Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (holding that, in a non-DMCA copyright case, a party seeking to unmask an anonymous speaker on Twitter is required to follow the two-step inquiry consistent with First Amended safeguards). No such disparity should be created that enables a subpoenaing party to bypass First Amendment safeguards, particularly where the DMCA "cannot be read to authorize enforcement of a DMCA subpoena in violation of the First Amendment." *Signature*

*Mgmt. Team*, 941 F. Supp. 2d at 1153. Put simply, the First Amendment safeguards must be met to unmask an anonymous speaker on the Internet even when a DMCA subpoena has been issued.

### 3.    Petitioner Has Not Satisfied the First Amendment Safeguards

The standards set forth above—as adopted by other federal courts, including those within the Eleventh Circuit—should be applied here to ensure that important First Amendment rights are not trammeled. This is particularly important where the user behind the account at-issue here was provided notice of Petitioner's subpoena, and contacted X Corp. to ask that it not disclose data unmasking him while he seeks legal counsel. ECF 25-1 (Perla Decl.), ¶ 7, Ex. A. Indeed, that individual contacted X Corp. after being provided notice of the subpoena, and stated that he "did not download the video from his X account," and that Petitioner purportedly wants to "reveal m[y] personal information [i.e., doxx the user] and is only doing this for his pettiness and revenge." *Id.*

These are serious concerns. This individual may have additional context that X Corp. does not, and that could shed light on reasons that maintaining anonymity are important.

These concerns were explained to Petitioner. But nothing in any of Petitioner's filings, including those submitted to the Court since he was told of the anonymous user's response, makes any attempt to satisfy these important First Amendment safeguards. At most, Petitioner in his Motion to Compel argued, without support, that conducting a First Amendment analysis would be "unnecessary" (ECF 15 at 10), and encouraged the Court to cast aside First Amendment safeguards that other courts nationwide have recognized are essential in this context to protecting free speech and to avoid a chilling effect on anonymous speakers' participation in the marketplace of ideas.

That argument is incorrect. First Amendment safeguards protecting the long-recognized right to speak anonymously, including on the internet, cannot be so cavalierly disregarded, particularly where the purportedly infringing content has already been removed (ECF 15 at 9) and the anonymous user has expressed concern about being unmasked.

Moreover, nothing submitted by Petitioner says anything to explain why under these circumstances (particularly with concern from the user about being unmasked) the balance of interests purportedly favor Petitioner. That is an important aspect of this analysis, and in all cases

asking courts to authorize a subpoena to unmask an anonymous speaker, the constitutional protections afforded to anonymous speech require courts to determine whether "the need to disclose the Doe Defendants' identities outweighs any First Amendment interest that the Doe Defendants might have in remaining anonymous." *Dish Network L.L.C. v. Motasaki*, 2020 WL 10786543, at *1 (S.D. Tex. Jun. 26, 2020). In making a determination as to the anonymous speaker's privacy interest, on numerous occasions, courts have even *sua sponte* paired protective orders with such requests to unmask. *See, e.g.*, *Hunter Killer Prods., Inc. v. Boylan*, 2021 WL 2878558, at *3 (W.D. Tex. Jan. 28, 2021); *Elargo Holdings, LLC v. Doe-68.105.146.38*, 2016 WL 10516727, at *5 (M.D. La. May 31, 2016) ("the Court enters the following Protective Order *sua sponte* . . . . [t]o protect the respective interests of the parties").

This balancing of interests is an inherently judicial function, and, in this context, can take into account the admissibility and strength of a petitioner's evidence and any necessary privacy protections when seeking to unmask the anonymous user. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499, 104 S. Ct. 1949, 1958, 80 L. Ed. 2d 502 (1984) (holding that an appellate court must "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.").

Put simply, X Corp. does not believe a sufficient demonstration of balancing has been made under these circumstances and is asking this Court to quash the Subpoena.

## IV.    <u>CONCLUSION</u>

X Corp. respectfully requests that the Court grant this motion to quash for the reasons set forth above.

Dated: August 15, 2025                    Respectfully submitted,

                                          */s/ Valerie Theng Matherne*
                                          **VALERIE THENG MATHERNE (LSBA #25898)**
                                          **CHLOE L. KRAKE (LSBA #41301)**
                                          **COURINGTON, KIEFER, SOMMERS,**
                                          **MATHERNE & BELL, L.L.C.**
                                          P. O. Box 2350
                                          New Orleans, LA 70176
                                          616 Girod Street

New Orleans, LA 70130
Telephone: (504) 524-5510
Facsimile:  (504) 524-7887
Email:   vmatherne@courington-law.com
             ckrake@courington-law.com

**AND**

**MCDERMOTT WILL & SCHULTE LLP**


By:      */s/J. Jonathan Hawk*
            J. Jonathan Hawk (SBN 254350)
            (admitted *pro hac vice*)
            Ari Swazer (SBN 359884)
            (admitted *pro hac vice*)
            2049 Century Park East, Suite 3200
            Los Angeles, CA 90067-3206
            Telephone:    +1 310 277 4110
            Facsimile:     +1 310 277 4730
            jhawk@mwe.com
            aswazer@mwe.com

            *Attorneys for Respondent X Corp.*

RESPONDENT (NON-PARTY) X CORP.'S MOTION TO QUASH
(CASE NO. 2:25-mc-00474-EEF-DPC)