# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE DMCA § 512(h), SUBPOENA TO X CORP. | CIVIL ACTION NO.: 2:25-mc-00474 |
| | JUDGE:          ELDON E. FALLON |
| | MAGISTRATE:   DONNA PHILLIPS CURRAULT |
| | HEARING DATE: September 3, 2025 |

## DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S MOTION TO QUASH SUBPOENA

{01480690.DOCX;1}

DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S
MOTION TO QUASH (Case NO. 2:25-mc-00474-EEF-DPC)

## DECLARATION OF J. JONATHAN HAWK

I, J. Jonathan Hawk, declare as follows:

1.      I am an attorney at law duly authorized to practice law in the State of California, and am admitted *pro hac vice* to this Court. I am a partner with the law firm of McDermott Will & Shulte LLP, and counsel of record for Respondent (Non-Party) X Corp. I have personal knowledge of the facts set forth herein, and could competently testify to those facts if called as a witness in this proceeding.

2.      On May 19, 2025, X Corp. was served with a subpoena (the "Subpoena") issued in connection with this matter under Section 512(h) of the Digital Millennium Copyright Act ("DMCA").

3.      On Monday, June 2, 2025, my office sent written responses, including objections, to that Subpoena to the issuing party, James Reeves ("Petitioner"). Among X Corp.'s objections to the Subpoena was an objection stating that, "this is the improper forum to bring this action. X Corp. is headquartered in Bastrop, Texas, and thus, this action is more properly brought there." My colleague Ari Swazer sent those written responses to Petitioner via an email on which I was copied, with that email expressly stating that "We are available to discuss." A true and correct copy of those written responses are attached as Exhibit B, which were sent with the email attached as Exhibit C at page 19.

4.      My office never received any communication from Petitioner until June 9, 2025. On that date, Petitioner sent an email to me and Ms. Swazer, claiming that X Corp. "violat[ed]" its "obligations under the Federal Rules of Civil Procedure." Petitioner's email claimed, among other things, that "Section 512(h) does not require a pending lawsuit, and courts have repeatedly rejected efforts to superimpose First Amendment and Stored Communications Act ('SCA') arguments to avoid compliance." Petitioner's email went on to demand that X Corp. produce materials by the end of that same day, June 9, 2025, or Petitioner would file a motion to compel production the following day, June 10, 2025. Specifically, Petitioner's email on that point stated, "[y]our blanket refusal to comply with a court order places X Corp. in violation of Rule 45(e) and exposes it to a

DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S
MOTION TO QUASH  (Case NO. 2:25-mc-00474-EEF-DPC)

motion to compel, along with a potential award of attorneys' fees and costs. We will file that motion tomorrow if responsive information is not produced by the court's deadline today, June 9." A true and correct copy of this email is attached as Exhibit D.[1]

5.     Ms. Swazer of my office responded to Petitioner's email the same day, copying me. Her email explained that neither she nor I had heard from Petitioner before his email despite the offer to meet and confer in Ms. Swazer's June 2, 2025 email, and that Petitioner was now demanding that X Corp. fully capitulate and abandon its objections, upon threat of Petitioner filing a motion to compel "in less than 24 hours" if X Corp. did not produce materials. Ms. Swazer's email explained that members of our team were out of the office and were not available to discuss that day, but that we could discuss the matter with Petitioner on June 11, 2025, i.e., in two days time. A true and correct copy of this email is attached as Exhibit C at page 18.

6.     As of June 9, 2025, I was in Washington, D.C. on business, and had meetings with clients in different parts of the city. I was thus either in offices or on public transit in Washington, and unable to speak with Petitioner. I was returning to Los Angeles and available to speak on June 11, 2025.

7.     Petitioner responded to Ms. Swazer's email, again copying me, on June 9, 2025. Petitioner's email disputed that he was making his demand on "less than 24 hours" notice because, as he reasoned, X Corp. was served with the Subpoena on May 19, 2025. He also claimed that, while he had been out of the office on June 2, 2025 when Ms. Swazer sent X Corp.'s written responses, he "nonetheless called your office last week and responded to your correspondence first thing this morning upon returning to my desk." Petitioner's response went on to deny that there is any meet and confer requirement before he could file his motion to compel and reiterated that, if X Corp. did not abandon its objections and produce documents by the end of the day on June 9,

---

[1] Petitioner also purported to send a "cease and desist" letter to me and Ms. Swazer on June 9, 2025. There was thus a forking email thread, where Ms. Swazer's response to Petitioner's June 9 email threatening a motion to compel was sent in response to his email attaching a "cease and desist" letter.

DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S
MOTION TO QUASH  (CASE NO. 2:25-mc-00474-EEF-DPC)

2025, he would file a motion to compel the following day. A true and correct copy of this email is attached as Exhibit C at pages 16-17.

        8.        I then responded to Petitioner's email on June 9, 2025. I clarified that I was out of the office "traveling and in/out of client meetings." I reiterated that "I can speak Wednesday [June 11] after I return to LA." My email went on to explain that we believed a meet and confer was needed to discuss and attempt to resolve any issues, if possible, before a motion to compel should be filed. My email stated that, "[t]o be clear, our written responses were timely, are well grounded and warrant discussion. That can't efficiently be done by email. You are mischaracterizing our responses, and improperly accusing us of delay (which is simply wrong), without speaking with us to better understand our positions, despite our multiple offers to speak. I see no reason to rush to burden the court with this without speaking first and trying to understand our concerns, particularly since I'm out of the office on business and have been since Sunday night." A true and correct copy of this email is attached as Exhibit C at pages 15-16.

        9.        Petitioner responded to my email that same day, "disagree[ing]" that our "offer to speak" was an offer to meet and confer in Ms. Swazer's June 2, 2025 email, and stating that he was available to speak for the "next few hours," while assuming that I should be available because "you are on [Pacific time]", which was incorrect. A true and correct copy of this email is attached as Exhibit C at page 15.

        10.      I responded the same day (June 9, 2025) while in transit to meet a client, reiterating that "I cannot rearrange my work schedule because you demand a call now." I also clarified that, even if Petitioner called my office the prior week, he "did not leave any voice message when you called last week and, until your emails now, we didn't connect a missed call without a voice message to this matter." I further noted that "[i]f you want to rush into court before then, please attach this email to show the court what really happened - that you didn't connect with us until this morning and demanded a same day production or that I rearrange my schedule with other clients to speak with you the same day, and you would not wait until Wednesday." A true and correct copy of this email is attached as Exhibit C at pages 14-15.

DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S
MOTION TO QUASH  (CASE NO. 2:25-mc-00474-EEF-DPC)

11.    Petitioner again responded that same day, claiming "I haven't demanded anything" and, without understanding my work commitments while out of the office (despite demanding that he be afforded understanding because he was out of the office from June 2 to June 9, 2025), "we could have had this conversation in the time it took you to write these emails." A true and correct copy of this email is attached as Exhibit C at page 14.

12.    I responded that I "don't want to lose context nor completeness in trying to lay it out via email, and waiting a couple days poses no downside. I disagree that we could have resolved via our emails today. I was attempting to organize a productive process (and asking for the courtesy of waiting to speak until I get back from this business trip) while in between engagements and in public places/transit where I could not (and still cannot) speak on the phone." A true and correct copy of this email is attached as Exhibit C at page 13. Petitioner did not respond until the following day, when he purported to serve me via email with his motion to compel that he filed that day (June 10, 2025).

13.    To be clear, I responded to Petitioner's numerous emails from taxis, client offices, and other locations in Washington, D.C., while on a work trip and where I did not have the time to take a call and speak openly about his matter. I alternatively could have simply ignored his emails, which I do not believe is an appropriate level of professionalism, and because Petitioner likely would have claimed I was being uncooperative either way—i.e., ignoring his emails entirely or responding via email which is the only thing I could have done.

14.    Petitioner filed his motion to compel on June 10, 2025, and did *not* attach our email thread, explaining that we repeatedly asked for a meet and confer on June 9, 2025, explained it would have to wait less than 48 hours because of my work travel, and asked that if he proceeded to file his motion without speaking first, that he attach our email thread to show the Court the efforts X Corp. undertook in efforts to discuss the issues before burdening this Court (and X Corp.) with motion practice.

15.    I and my colleague Ms. Swazer spoke with Petitioner on a call on June 11, 2025, after he filed his motion to compel. During that call, I explained at length the First Amendment

safeguards set forth in X Corp.'s previously-filed opposition to the motion to compel and now X Corp.'s motion to quash. I explained that the information he provided did not satisfy those safeguards, including that X Corp.—without familiarity as to his relationship with the anonymous user—could not determine whether the balancing of interests favored Petitioner. I further explained that, since he had filed his motion to compel and it was clear he was proceeding in this Court, that this Court was not the proper place for the dispute. I explained in detail that X Corp. has no connection with this forum and that this Court lacks personal jurisdiction over X Corp. I also explained that this Court lacked the authority to issue the Subpoena in the first instance. I noted that we raised the issue with this Court not being the proper court to hear this matter in our written objections.

16.     I also told Petitioner that his motion was not properly served on us via email, and that for that reason alone, the motion had been improperly set under the local rules because X Corp. was not timely served given the hearing date of June 25, 2025.

17.     Petitioner did not argue in any respect that he believed X Corp. had waived objections to this Court hearing the matter. Instead he stated that this Court was the proper court because it had issued the Subpoena in the first instance.

18.     I went on to propose during our call, to avoid the jurisdictional and venue issues, that Petitioner withdraw his proceeding and initiate a proceeding in Texas where he caused the Subpoena to be served and where X Corp. is headquartered. I also offered to send him a sample of a pleading from a different case, showing a discussion of the First Amendment safeguards that I had previously explained. Petitioner agreed that I send him the sample, and agreed to withdraw his motion to compel and reinitiate proceedings in Texas.

19.     Two days later, on June 13, 2025, I and Ms. Swazer had another call with Petitioner. During that call, I explained that the anonymous user had contacted X Corp. and expressed concern that unmasking him would lead to Petitioner harassing him, as set forth in the declaration submitted in support of X Corp.'s opposition to the motion to compel, and now its motion to quash (ECF 25-1). During that call, Petitioner again agreed to proceed with this matter in a Texas court to avoid

the jurisdictional and venue issues. Petitioner, however, stated that he would not entirely withdraw his motion to compel. Instead he would continue it to a later hearing date to enable him time to initiate a proceeding in Texas and pursue that avenue.

20.     Ms. Swazer that same day sent Petitioner the sample pleading mentioned above. A true and correct copy of this email is attached as Exhibit C at page 10.

21.     On June 17, 2025, the motion to compel was still listed as being on the Court's calendar. Ms. Swazer emailed Petitioner (with me copied) and asked for an update. Ms. Swazer responded, sending a screenshot of the Court's docket from PACER, showing that it was still set for a hearing on June 25, 2025. Petitioner responded, stating that he was trying to move it to July 30, 2025. True and correct copy of these emails are attached as Exhibit C at pages 8-9.

22.     Petitioner responded later that day, stating that he had properly served us via email with his motion to compel. Ms. Swazer responded, explaining why that was not proper under Fed. R. Civ. P. 5, namely because we never consented to email service and had not appeared in this proceeding. True and correct copy of these emails are attached as Exhibit C at pages 6-7.

23.     Two days later, on July 19, 2025, Petitioner responded to Ms. Swazer, claiming that he merely "agreed to consider" pursuing this matter in a Texas court. That is not correct. There was no such caveat or equivocation during our phone calls on July 11 and 13, 2025. Petitioner was clear in expressly agreeing during those calls to pursue his matter in a Texas court, as part of which we would (and did) send him the sample pleading mentioned above.

24.     Petitioner's email stated that he now believed X Corp. was being uncooperative, and that he would proceed with his motion to compel in this Court with a new hearing date of July 30, 2025.

25.     On June 23, 2025, Petitioner emailed me a copy of the order resetting the hearing date on his motion to compel for August 6, 2025.

26.     Ms. Swazer on June 24, 2025 emailed Petitioner again, attempting to encourage him to honor his agreement to pursue this matter in a Texas court. Petitioner responded that day disclaiming his agreement to do that. Ms. Swazer responded, asking for a call in efforts to sort out

DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S
MOTION TO QUASH  (CASE NO. 2:25-mc-00474-EEF-DPC)

these issues, as did I in a separate email. Petitioner refused. True and correct copy of these emails

are attached as Exhibit C at pages 1-3.

I declare under penalty of perjury under the laws of the State of California, of the State of

Louisiana, and of the United States of America that the foregoing is true and correct.

Executed this 15th day of August, 2025, at Pasadena, California.


/s/  J. Jonathan Hawk
J. Jonathan Hawk (SBN 254350) (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone:     +1 310 277 4110
Facsimile:     +1 310 277 4730
jhawk@mwe.com
***Attorney for Respondent X CORP.***

DECLARATION OF J. JONATHAN HAWK IN SUPPORT OF RESPONDENT (NON-PARTY) X CORP.'S
MOTION TO QUASH  (CASE NO. 2:25-mc-00474-EEF-DPC)